## Landon · *v.* Brown. Betts's Appeal.

*Deed—Conditional delivery—Escrow.*

Where the future delivery of a deed is merely to await the lapse of time, or the happening of some contingency, and not the performance of any condition, it will be deemed the grantor's deed presently; but where the future delivery depends upon the payment of money, or the performance of some other condition, it will be deemed an escrow.

Where in such a case the grantee obtains possession of the deed without performing the condition, he acquires at the most but a voidable title to the lands described in the deed.

*Delivery in escrow—Time when deed takes effect.*

In general, when an instrument is delivered as an escrow to a third person to be delivered to the grantee on a future event, it is not the deed of the grantor until the second delivery; but relation back to the first delivery is sometimes allowed in cases of necessity to avoid injury to the operation of the deed from events happening between the first and second delivery.

A father executed a deed to his son, and delivered it to a third person to be held in escrow until the son should have paid the grantor's debts. After the father's death, the son obtained possession of the deed without having paid the debts. *Held,* that there was no relation back so as to vest title in the son at the date of delivery in escrow.

*Judgment—Revival—Deed.*

An owner of lands subject to a judgment executed a deed for the lands to his son, and delivered the deed to a third person to hold until all the debts of the grantor had been paid by the son. In his will he further directed that the deed should not be delivered to his son until the debts were paid. After the grantor's death, the son obtained possession of the deed without having paid the debts, and subsequently signed an amicable scire facias to revive, as terre tenant, and also as executor of his father. *Held,* (1) that the son took the land under the deed, and not under the will; (2) that the title which he took was a voidable one; (3) that the amicable scire facias operated to continue the judgment against the land.

*Revival of judgment—Identification—Recitals—Practice.*

In order to continue the lien of a judgment, a scire facias to revive must correctly recite the original judgment and substantially identify it as to parties, date and amount.

Argued March 12, 1894. Appeal, No. 177, July T., 1893, by N. N. Betts, cashier, subsequent execution creditor, from order of C. P. Bradford Co., Feb. T., 1892, Nos. 314 and 315, distributing proceeds of sheriff's sale of realty, in suit of Geo. Landon v. James B. Brown, executor of A. R. Brown, deceased, and George Brown, terre tenant. Before STERRETT, C. J., GREEN. McCOLLUM, MITCHELL, DEAN and FELL, JJ. Affirmed.

Exceptions to auditor's report distributing proceeds of sheriff's sale of real estate. Before PECK, P. J.

The auditor, F. E. Beers, Esq., reported as follows:

### "FINDINGS OF FACTS.

" From the evidence the auditor finds the following facts:

" 1. The fund for distribution is $2,535, raised by sheriff's sale of lands formerly of A. R. Brown, late of the township of Herrick in the county of Bradford, as follows: $2,275 of said fund was raised by sale of certain lands mentioned in the will of the said A. R. Brown, deceased, as the Jones and Orshalt farms, and the balance of $260 being raised by the sale of about fifteen acres of the Bolles farm named therein.

" 2. That the said A. R. Brown died testate on or about Nov. 25, 1883, having made, on Jan. 18, 1883, his last will and testament, and on May 14, 1883, a codicil thereto, a copy of which will and codicil is attached to this report.

" 3. In said will the decedent appointed as his executors

John J. Anderson, George. Brown and James B. Brown, and
after the death of the said A. R. Brown, to wit: on Feb. 6,
1884, George Brown, one of the within named executors pro-
duced said will before Hon. James H. Webb, then register of
wills of Bradford county, and the same was duly proved by J.
J. Anderson and George Landon, the subscribing witnesses
thereto.   It is admitted by the claimants before the auditor
·that said witnesses were actually sworn by said register but
that by mistake or omission he did not sign the jurat, but that
said will was filed and indorsed by said register as admitted to
probate on Feb. 6, 1884.   It is also admitted that the neglect
of said register to sign the jurat was not discovered until the
month of November, 1891, when said will was again probated
before Charles M. Hall, then register of wills of said county.

"4. At the time of the filing of said will, to wit: on Feb. 6,
1884, no letters testamentary were granted, but it appears from
the testimony of George Brown before the auditor that he acted
in the capacity of executor of his father's estate to some extent,
by paying the funeral expenses of the decedent, although no
letters were issued to him.   When said will was probated be-
fore Charles M. Hall, register, on Nov. 28, 1891, the said George
Brown declined to take out letters upon said estate, and said
letters were duly issued to James B. Brown, one of the execu-
tors named in said will.

"5. That the said A. R. Brown, prior to his death, conveyed
to his son, George Brown, by deed dated April 6, 1881, and ac-
knowledged Feb. 16, 1882, the Bolles farm of 118 acres and
32 perches, from the sale of about 15 acres of which $260 of the
fund for distribution was realized ; said deed being recorded on
Feb. 23, 1884, in Bradford county.

"6. The said A. R. Brown also executed a deed dated
April 6, 1881, and acknowledged Feb. 16, 1882, conveying to
his son, George Brown, what was known as the Jones and Or-
shalt farms, from the sale of which $2,275 of the fund for dis-
tribution was raised.   The deed was recorded March 28, 1885,
in Bradford county.   In the opinion of the auditor there is a
sufficiency of evidence to rebut the presumption of the deliv-
ery of this deed, and to warrant the finding that the same was
deposited with the wife of the grantor, Mary Brown, to be de-
livered to the grantee, George Brown, upon his performing cer-

tain conditions.  In the last will and testament of the said A. R. Brown we find the following : ' All my honest debts, liabilities whatsoever nature they may be shall be paid by my son, George Brown, according to an arrangement heretofore made, as follows, to wit : I have heretofore made unto him a deed of the Bolles farm, the Jones farm and Orshalt farm, for which he the said George Brown shall satisfy all honest claims that may come against me, or unsettled matters before the first day of April, 1882.  When all those matters are adjusted and satisfied then a certain deed of the Jones and Orshalt farm shall be given up to him.'

" In the codicil attached thereto, as follows : ' My son, George Brown, is not to have possession of the Orshalt farm mentioned above until all debts, demands and unsettled matters against me are fully adjusted and cancelled by him.  When this done the deed for the Jones and Orshalt lands shall be delivered to him by my wife, with whom said deed is deposited.'

" It is evident that the payment of the debts of the said A. R. Brown was made a condition precedent to the delivery of the deed for the Jones and Orshalt farms, and this condition was never performed by the said George Brown, or at least only partly performed, as the so-called ' Landon judgments ' were not paid.  George Brown, however, on or about March 28, 1885, obtained possession of said deed, in what manner the evidence presented before the auditor does not show, and had the same recorded as aforesaid, on March 28, 1885.

" 7. One of the judgments in favor of George Landon was originally entered April 24, 1877, by Julia C. Stiles, plaintiff, against Cyrus Avery and A. R. Brown, to No. 1357 May term, 1877, in the Court of Common Pleas of Bradford county, and was assigned to George Landon, by an assignment filed Feb. 2, 1880.  This judgment was revived by an amicable scire facias filed April 12, 1882, against A. R. Brown and George Brown, terre tenant, to No. 659 May term, 1882.  An amicable scire facias to revive this judgment and continue the lien thereof was filed March 18, 1887, against George Brown, terre tenant and executor of A. R. Brown, deceased, to No. 407 May term, 1887.  A scire facias to revive this judgment was issued Feb. 25, 1892, against George Brown, terre tenant, and George Brown, executor of A. R. Brown, deceased, to No. 246 May term,

1892, and was returned served by the sheriff, Feb. 17, 1892, on George Brown, terre tenant, and George Brown, executor of A. R. Brown, deceased. A scire facias to revive judgment and continue lien 'et quare executionem non,' of No. 659 May term, 1882, was also issued Jan. 13, 1892, against James B. Brown, executor of A. R. Brown, deceased, and George Brown, T. T., to No. 314 Feb. term, 1892, and was returned served by the sheriff, Jan. 15, 1892, on James B. Brown, executor of A. R. Brown, and on George Brown, terre tenant, Jan. 29, 1892. On April 5, 1892, judgment was entered in favor of plaintiff and against James B. Brown, executor of A. R. Brown, deceased, and George Brown, T. T., for $1,070 with interest from April 5, 1892.

" 8. The other judgment in favor of George Landon was originally entered June 29, 1877, by him as plaintiff, against A. R. Brown and George Brown, to No. 650 Sept. term, 1877. This judgment was revived by amicable scire facias filed April 12, 1882, against A. R. Brown and George Brown to No. 660 May term, 1882. An amicable scire facias to revive this judgment and continue the lien thereof was filed March 18, 1887, against George Brown and George Brown, T. T. and executor of A. R. Brown, deceased, to No. 408 May term, 1887. A scire facias to revive this judgment was issued Feb. 25, 1892, against George Brown, George Brown, terre tenant, and George Brown, executor of A. R. Brown, deceased, to No. 247 May term, 1892, and was returned served by the sheriff, Feb. 27, 1892, on George Brown, George Brown, terre tenant, and George Brown, executor of A. R. Brown, deceased. A scire facias to revive judgment and continue lien 'et quare executionem non' of No. 660 May term, 1882, was also issued Jan. 13, 1892, against James B. Brown, executor of A. R. Brown, deceased, George Brown, and George Brown, T. T., to No. 315 Feb. term, 1892, and was returned served by the sheriff, Jan. 15, 1892, on James B. Brown, executor of A. R. Brown, and on George Brown, terre tenant, Jan. 29, 1892. On April 5, 1892, judgment was entered in favor of plaintiff and against James B. Brown, executor of A. R. Brown, deceased, George Brown and George Brown, terre tenant, for $1,170.40 with interest from April 5, 1892.

" 9. That the taxes upon said lands were regularly levied

and assessed and are unpaid. That said taxes have never been returned to the commissioners' office, as required by the act of assembly, on or before Jan. 1st. That the personal property on the land was levied upon and sold before Jan. 1, 1891, and the real estate levied upon soon afterward.

"10. The judgment in favor of the First National Bank which is presented to be the first paid out of the fund, was entered to No. 277 Dec. term, 1891, on Oct. 10, 1891, to the use of N. N. Betts, Cashier, v. George Brown and B. L. Smith, and the note upon which judgment is entered is dated Dec. 21, 1889, and is a collateral note for $16,000, given as security for any or all of the present or future indebtedness of either of us to the First National Bank of Towanda, as makers or indorsers of notes or drafts held by it, or for any advances made to us, by overdrafts on our accounts or otherwise.

"11. It is the opinion of the auditor upon mature consideration that the intention of the testator, A. R. Brown, was to make the legacies bequeathed to Elisha Brown, Blanche Brown and Carrie Brown charges upon the Wetmore farm and not charges upon the Bolles, Jones or Orshalt farms, and the auditor so finds.

"12. Under these facts, Mr. R. A. Mercur, representing the First National Bank, claims that, by the deed dated April 6, 1881, and delivered on or about March 28, 1885, George Brown acquired a title to the Jones and Orshalt farms of 95 acres and 103 acres and 103 perches, respectively, and that said delivery related back so as to vest in him his title to the lands in question at the depositing with Mrs. Brown, and before the death of the grantor, A. R. Brown.

"That the scire facias issued Jan. 13, 1892, to No. 314 Feb. term, 1892, in favor of George Landon v. James B. Brown, executor of A. R. Brown, deceased, George Brown, T. T., to revive and continue the lien of judgment No. 659 May term, 1882, did not issue until more than nine years after the entry of said latter judgment, and that said scire facias did not correctly recite the parties to the original judgment it sought to revive, and therefore did not continue its lien against the lands sold.

"That the scire facias issued Jan. 13, 1892, to No. 315 Feb. term, 1892, in favor of George Landon v. James B. Brown,

executor of A. R. Brown, deceased, George Brown and George Brown, T. T., to revive and continue the lien of judgment No. 660 May term, 1882, filed April 12, 1882, did not issue until more than nine years after the entry of said latter judgment, and that said scire facias did not correctly recite the parties to the original judgment it sought to revive, and therefore did not continue its lien against the lands sold.

" Also that the scire facias issued Feb. 25, 1892, to No. 246 May term, 1892, in favor of George Landon's use v. George Brown, terre tenant, and George Brown, executor of A. R. Brown, deceased, to revive and continue the lien of judgment No. 407 May term, 1887, did not correctly recite the parties to the latter judgment it sought to revive and therefore did not continue the lien against the lands sold.

" That these judgments therefore are not entitled to share in the distribution of the fund before the auditor.

" Mr. McPherson representing George Landon claims that the delivery of the deed of the Jones and Orshalt farms, contrary to the condition expressed in the last will of the grantor, did not convey to George Brown a title to the lands sold, but that he acquired the same as an heir or devisee, and therefore the Landon judgments having been liens on the land sold, at the time of the death of A. R. Brown, it was not necessary to keep them revived, in order to keep priority of lien over any judgment creditors of George Brown.   But if these judgments were required to be revived, then they have been so kept revived as to preserve their lien.

" That even if the title passed to George Brown, he being a defendant in both judgments, the judgments have been kept revived against him and would be entitled to be first paid out of the fund.

" Also that if necessary George Landon could claim that the judgments should be first paid out of the fund, on the ground that they were testamentary liens.

" CONCLUSIONS OF LAW.

" The questions raised are considered in their order :

" If A. R. Brown in his lifetime had not executed deeds of the lands sold by the sheriff in this case, the matters in dispute before the auditor would have been much less complicated.

" The auditor has already found that George Brown acquired a good title to the Bolles farm by deed delivered, and has found it is from the sale of a part of this farm that $260 of the fund for distribution was raised.

" There is also little or no dispute as to the facts in relation to the alleged delivery of the deed of the Jones and Orshalt farms, from the sale of which the balance of the fund was realized, but the question raised seems to be whether these facts are such as would constitute a good delivery of the deed.

" The auditor has found that this deed was delivered to Mrs. Mary Brown, to be delivered to George Brown upon his performing a condition set forth in the will of the grantor. This deed is absolute upon its face, but the will refers to the deed in such a manner as to make it in some sense a part of the will, and is to be taken in connection with the will to get at the purpose of the grantor.

" It has been held in a number of cases that where the future delivery of a deed was merely to await the lapse of time, or the happening of some contingency, and not the performance of any condition, it will be deemed the grantor's deed presently, but where the future delivery depends upon the payment of money, or the performance of some other condition, it will be deemed an escrow.

" To make the delivery conditional, it is not necessary that any express words should be used at the time ; the conclusion is to be drawn from all the circumstances: Smith on Contracts, 9.

" The essence of delivery seems to be the intention of the parties, and, in the opinion of the auditor, there is no doubt but that A. R. Brown intended to make the payment of his debts a condition precedent to the delivery of this deed. It is true that the recording of the deed by the grantee is evidence from which delivery may be presumed, but if the will of the grantor and the evidence of George Brown are to be considered, this presumption is rebutted and destroyed. If it were the case of bona fide purchasers, stronger evidence might be required to rebut the presumption of delivery, but there is nothing of the kind in this case, and it is not even claimed by the creditors of George Brown that they advanced money to him on the faith of his title to the Jones and Orshalt farms. This deed then as

deposited with Mrs. Mary Brown was an escrow, to be delivered upon the performance of the condition set forth in the will of the grantor, and the performance of this condition was necessary to make the instrument operative and vest a complete title in George Brown.   In Blight v. Schenck, 10 Pa. 285, it was held: 'A delivery to an agent as an escrow and by him delivered to the grantee contrary to the condition, passes a title voidable only.'   It seems therefore that by the delivery or obtaining possession of the deed to the Jones and Orshalt farms by George Brown without performing the condition, he acquired, at the most, but a voidable title to the lands described therein.

" It is contended, moreover, that the title George Brown acquired in these farms became vested in him at the time of the original delivery, that is, that the deed took effect by relation back to the time of depositing it as an escrow.   Generally an escrow takes effect from the second delivery, and is to be considered as the deed of the party at that time, but this rule does not apply when justice requires a resort to fiction.   The relation back to the first delivery so as to give the deed effect from that time is allowed in cases of necessity, to avoid injury to the operation of the deed from events happening between the first and second delivery: Kent's Com. 454.   Thus it was held in Levengood v. Bailey, 1 Woodward, 275 : ' In general when an instrument is delivered as an escrow to a third person to be delivered to the grantee on a future event, it is not the deed of the grantor until the second delivery ; but this rule is subject to exception " founded," it is said, " on necessity, ut res valeat." '

" In the authorities cited to sustain this point, Stephens v. Rinehart, 72 Pa. 434, 2 Wharton on Contracts, p. 53, etc., there seem to have been no objections on legal grounds to the effectiveness of the deed, as the contingency upon which the deed was to be delivered was the death of the grantor, and that happening, and the deeds being delivered accordingly, it was held to be a good delivery and to relate back to the time of first depositing in escrow.

" The auditor cannot see the necessity for applying the exception to the general rule to the case in hand.   It is true that A. R. Brown died before the delivery of the deed, but this seems to be the only similarity to the cases cited, as the condition upon

which Mrs. Brown was to deliver this deed was not performed. Although it hardly seems to be material as to the matter of distribution of the fund, it cannot be said that such a delivery would relate back so as to vest what title George Brown may have acquired in the Jones and Orshalt farms in him, at the time of the depositing of the deed with Mrs. Brown.

"The principal question, however, from which the delivery of this deed seems to have incidentally arisen is : Was it necessary to revive the Landon judgments in order to preserve their lien against the lands sold, and if so, were they so revived as to retain their priority of lien as against George Brown's junior judgment creditors ?

"If A. R. Brown had died seized of the land and it had descended or been devised to George Brown, there can be no question but that the Landon judgments, being valid and subsisting liens at the time of his death, they would retain their priority of lien without revival, as it has been well established that the lien of a judgment against a decedent at the time of his death as against his heirs and devisees is without limit, and needs not to be revived every five years in order to be executed at any time on lands still held by them : Shearer v. Brinley, 76 Pa. 300, and the cases there cited.

"But is George Brown such an heir or devisee as made it unnecessary to revive these judgments? If A. R. Brown had died intestate he would of course have been one of the heirs, but A. R. Brown left a will in which he gave explicit directions as to the disposal of his property, but does not devise any lands to George Brown. It seems to have been the testator's intention to convey the lands in question to George Brown by deed, annexing thereto a condition, and the mention of these lands in the will is a reiteration of the condition upon which the deed was to be delivered, which had previously been agreed upon at the execution. In the language of the will, 'according to an arrangement heretofore made as follows, to wit : I having heretofore made unto him a deed of the Bolles farm, the Jones farm and the Orshalt farm, for which the said George Brown shall,' etc., and in the codicil thereto annexed, 'My son George Brown is not to have possession of the Orshalt farm mentioned above until . . . . when this done the deed for the Jones and Orshalt lands shall be delivered to him,' etc.

" The title George Brown acquired in these lands was then from the deeds.  It would therefore seem necessary for the Landon judgments to be revived.  The auditor has found that the title George Brown acquired by the delivery of the deed to the Jones and Orshalt farms was a voidable one, but no proceedings have been instituted to set the deed aside, and the said deed being duly recorded on March 28, 1885, was constructive notice to George Landon, the plaintiff in the judgments, that George Brown was the owner of the lands, and therefore that the judgments should be revived against him in order to preserve their lien.  But have they not been so kept revived against George Brown ?

" As has been seen, the original judgments were revived by amicable scire facias to No. 659 May term, 1882, and No. 660 May term, 1882, during the lifetime of A. R. Brown, and it is from the revivals of these judgments that the contention arises.

" The records of the common pleas show that within five years from the entry of these judgments, viz.: on March 18, 1887, an amicable scire facias to revive judgment No. 659 May Term, 1882, was filed, and A. R. Brown having in the meantime died, this revival No. 407 May term, 1887, was signed ' George Brown, T. T., and executor of A. R. Brown, deceased.'   [If George Brown had simply signed this amicable scire facias as terre tenant it would have been sufficient to have revived the judgment against this land of which he was .the alienee.] [8]   In Same's Ap., 26 Pa. 184, it was held: ' Where land upon which a judgment is a lien, has been aliened by the defendant, an amicable revival of that judgment, by the terre tenant, by an agreement to which the defendant is not a party, will continue the lien of such judgment on the land.'   The court in the opinion said: ' If the defendant be not a necessary party to the scire facias, still less is he necessary to the amicable revival.   Purchasers from the terre tenant or subsequent incumbrancers have nothing to complain of, for the record is notice to them that his land is bound by the judgment.'

" The records also show that on March 18, 1887, an amicable scire facias to revive judgment No. 660 May term, 1882, was filed and entered to No. 408 May term, 1887, signed by the plaintiff, George Brown, George Brown, T. T., and executor of A. R. Brown, deceased.   [Under the same ruling this would

also continue the lien of the judgment sought to be revived, as against George Brown. But this judgment would not only operate as a judgment de terris, but also as a personal judgment against him, as he is one of the defendants in the original judgment, and signs the revival in person and also as terre tenant.] [9] In Edwards's Appeal, 66 Pa. 89 (affirmed in Beshler's Estate, 129 Pa. 268), it was held that where the original judgment was entered against two and the revived judgment was confessed by one alone : ' That the judgment so confessed was good against him and sufficient to continue the lien, and nobody else could complain and he does not.'

" [There can be no question therefore but that the amicable revivals No. 407 May term, 1887, and 408 May term, 1887, continued the lien of the Landon judgments for another term of five years.] [10]

" The lien of these judgments if not revived would expire on March 18, 1892, but in the meantime on Feb. 25, 1892, a scire facias issued on each judgment to revive and continue the lien. These sci. fas. were duly returned served by the sheriff and if in regular form would operate to continue the lien.

" The mere issue of the sci. fa. within five years of the rendition of the judgment continues its lien for the period of five years from the date of such issue, whether it be served or not: 1 Trickett on Liens, page 266.

" We are, however, met with the proposition that in sci. fa. No. 246 May term, 1892, issued to revive and continue the lien of judgment No. 407 May term, 1887, the parties are not correctly recited, and therefore it did not revive and continue the lien of said judgment. It is no doubt the rule, often laid down, that in order to continue the lien of a judgment a scire facias to revive must correctly recite the original judgment and substantially identify it, as to parties, date and amount.

" [Was it not so identified in the present instance ? The number, term and amount in the scire facias are identical with the number, term and amount in No. 407 May term, 1887, which it purported to revive. The names of the parties recited are nearly identical, and the variance is so slight that no one could possibly be misled by it. The auditor is of the opinion that it sufficiently described the original judgment and therefore continued its lien.] [11]

" On Jan. 13, 1892, the death of A. R. Brown was suggested, and James B. Brown having then taken out letters upon the estate, his name was substituted of record in No. 659 May term, 1882, and No. 660 May term, 1882, and the two writs of scire facias et quare executionem non, No. 314 Feb. term, 1892, and 315 Feb. term, 1892, respectively issued thereon. It is also contended that these sci. fas. did not correctly recite the parties to the original judgments and therefore did not continue the lien.

" The variance can be seen when it is stated that the judgment No. 659 May term, 1882, was in favor of ' Julia C. Stiles to use of George Landon v. A. R. Brown, George Brown, terre tenant,' for the sum of $1,008.85.   The recitals in the præcipe and writ were ' George Landon v. James B. Brown, executor of A. R. Brown, deceased, George Brown, T. T.,' for the sum of $951.75.

" Judgment No. 660 May term, 1882, was in favor of ' George Landon v. A. R. Brown and Geo. Brown,' for the sum of $1,103.65 ; the recitals in the præcipe of the scire facias to revive were ' George Landon v. James B. Brown, executor of A. R. Brown, deceased, George Brown and George Brown, T. T. ; ' the writ recited ' George Landon v. James B. Brown, executor of A. R. Brown, deceased, George Brown, T. T.,' for the sum of $1,041.25.

" There does not seem to be a parallel case with the present one in the authorities cited to show that this variance was sufficient to make the identity of the original judgment doubtful. In the opinion of the lower court in Wood v. Codding, affirmed in 134 Pa. 91, it was held : ' It is true that a scire facias on a judgment should follow the original judgment in the amount, date and names of the parties, and if there is a failure or defect in any of these respects, on a plea of nul tiel record, it is fatal. But if that plea is not made, and there is a judgment obtained, it seems to us that we cannot, collaterally, set that judgment aside.   It may change, on the scire facias, as to the amount, or by substituting administrators or new names, and if there is a substitution of new names, and that objection is not raised upon the trial of the case, and judgment is entered, it seem to us that the judgment must stand.   It seems to us that all that is necessary here is to ascertain that there is such an identity of these

proceedings that one of these judgments is a revival of the other.'

" [This seems to apply to the present case.  These two writs may not have been as carefully drawn as they should have been, yet the auditor is of the opinion that they sufficiently point out the original judgments.  But it was not necessary under the finding of the auditor to revive these judgments against George Brown, as the lien had been kept good against the land in his hands.] [12]  It is also alleged by the counsel for George Landon that these sci. fas. were issued only for the purpose of execution.  From an inspection of the record it is seen that judgment was duly entered thereon, by default, on April 6, 1892, and duly docketed and indexed.  On the same day the lands were levied upon, and on April 28, 1892, were sold.

" [It seems evident that under whatever judgment the lands were sold, these judgments would be first entitled to be paid in preference to any subsequent creditors of George Brown.] [13]

" [It is true that the proceedings are somewhat irregular, but it is the rule that where a judgment is attacked as erroneous or on account of an irregularity, it must be done at the instance of the defendant himself, and if he submits to an execution under it, others cannot object, except for fraud or collusion.  The irregularity in this case is not one which could defeat the payment of the Landon judgments; but, even if this had been so if taken in time, it is one of which the defendants alone, who do not object, could have taken advantage.] [14]

" There is no doubt in the mind of the auditor that A. R. Brown intended these lands to pay the Landon judgments, but instead of charging them directly with the payment in his will, he depended upon the conditional delivery of the deeds to effect his intention, which, together with the attempt of the plaintiff to be his own lawyer, has caused the contention in this case. He has been diligent in keeping the judgments revived; if anything, there has been perhaps more revivals than was necessary, but [from whatever point the case is considered, the conclusion is inevitably reached that the judgment creditors of George Brown would not be entitled to come in on the fund until the Landon judgments had been first paid.] " [15]

The Landon judgments were paid in full, leaving only a small balance to be applied to appellant's judgment.

Exceptions were filed by appellant to the portions of the auditor's report inclosed in brackets. Exceptions dismissed.

*Errors assigned* were, among others, (8–15) dismissal of exceptions, as above, quoting them.

*Rodney A. Mercur, Ulysses Mercur* with him, for appellant, cited: Collingwood v. Carson, 2 W. & S. 220; Custer v. Detterer, 3 W. & S. 28; Fursht v. Overdeer, 3 W. & S. 470; Little v. Smyser, 10 Pa. 381; Zerns v. Watson, 11 Pa. 260; Com. v. Miller's Admrs., 8 S. & R. 452; Com. v. Mateer, 16 S. & R. 416; Dowling v. McGregor, 91 Pa. 410: Brown v. Webb, 1 Watts, 411; McKinney v. Mehaffy, 7 W. & S. 276; Grenell v. Sharp, 4 Whart. 344; Richter v. Cummings, 60 Pa. 441; Dietrich's Ap., 105 Pa. 174; 2 Wharton on Contracts, § 679; Stephens v. Huss, 54 Pa. 20; Holt's Ap., 98 Pa. 257; Stephens v. Rinehart, 72 Pa. 434; Blight v. Schenck, 10 Pa. 285; Eckman v. Eckman, 55 Pa. 273; Bisph. Eq. § 202; Pearsoll v. Chapin, 44 Pa. 9; Howard v. Turner, 155 Pa. 349; Pollock on Contracts, *536; 1 Trickett on Liens, §§ 202, 223.

*I. McPherson, Edward Overton* and *E. J. Angle* with him, for appellee, cited: Stephens v. Rinehart, 72 Pa. 434; Baum's Ap., 113 Pa. 58; Foster v. Mansfield, 3 Metc. 414; Daggett v. Daggett, 143 Mass. 516; Lindley v. Groff, 37 Minn. 338; Quick v. Milligan, 108 Ind. 419; Echman v. Echman, 55 Pa. 269; Critchfield v. Critchfield, 24 Pa. 100; Acts of June 16, 1836, sec. 86, P. L. 777; Feb. 24, 1834, § 25, P. L. 77; Jack v. Jones, 5 Whart. 32; Wiest v. Koons, 2 Pa. C. C. R. 317; Middleton v. Middleton, 106 Pa. 252; Miller v. Meetch, 8 Pa. 417; Shoenberger v. Savings Institution, 28 Pa. 459; Bowman's Ap., 62 Pa. 166; Early v. Zeiders, 137 Pa. 463; Wood v. Codding, 134 Pa. 91; Same's Ap., 26 Pa. 184; Yeager's Ap., 129 Pa. 268; Edwards's Ap., 66 Pa. 91; Mellon's Ap., 96 Pa. 475; Grover v. Boon, 124 Pa. 399; McFait's Ap., 8 Pa. 290; Bank v. Donaldson, 7 W. & S. 407; Alexander v. McMurry, 8 Watts, 504.

PER CURIAM, March 26, 1894:

We have considered this record with special reference to the

several questions presented by the specifications of error, and are not convinced that either of said specifications should be sustained.  The questions involved have been so well considered and satisfactorily disposed of by the learned auditor that we think the decree should be affirmed for reasons given in his report.

Decree affirmed and appeal dismissed with costs to be paid by N. N. Betts, cashier, etc., appellant.