[No. 2292]

# THE STATE OF NEVADA, RESPONDENT, *v.* HECTOR MacKINNON, APPELLANT.

[168 Pac. 330]

1. HOMICIDE — INDICTMENT — REQUISITES AND SUFFICIENCY — "ASSAULT."

    Rev. Laws, 6412, defines an assault as an unlawful attempt, coupled with the present ability, to commit a violent injury. Section 7050 provides that the indictment must contain a statement of the acts constituting the offense, in ordinary language so that a person of common understanding would know what was intended. *Held,* that an information, alleging that accused on a certain day, "he having the ability then and there so to do, did wilfully, unlawfully, and feloniously" assault another, sufficiently alleged present ability.

2. CRIMINAL LAW—APPEAL—SCOPE—PRESERVATION OF EXCEPTIONS.

    Unless an attack upon the information shows a fatal defect it will be ignored when made for the first time on appeal.

3. CRIMINAL LAW—CONTINUANCE—GROUNDS—SECURING COUNSEL—WAIVER.

    The privilege of accused under Const. art. 1, sec. 8, to appear in person or with counsel may be waived, and, once waived, a judgment will not be reversed because the court at a later date refused to grant a continuance so that counsel might be employed unless the refusal was an abuse of discretion.

4. CRIMINAL LAW—CONTINUANCE—GROUNDS—SECURING COUNSEL—WAIVER.

    Where defendant when arraigned waived his right to counsel and was thereafter brought into court twice before trial and did not signify his desire for counsel until the morning of the trial more than two weeks after the order setting the case for trial, it was not an abuse of discretion to deny his motion for continuance for the purpose of securing counsel.

5. HOMICIDE—INSTRUCTIONS—PRESUMPTIONS—INTENTION.

    In prosecution for assault with a deadly weapon, instruction that the law presumes that accused intended to do that which he voluntarily and wilfully did was erroneous.

APPEAL from Seventh Judicial District Court, Mineral County; *Emmett J. Walsh,* Judge.

Hector MacKinnon was convicted of assault with a deadly weapon, and appeals. **Reversed,** and new trial ordered.

*Frame & Browne,* for Appellant:

The information is fatally defective, in that it does not state facts sufficient to constitute a public offense, and

particularly the offense with which the defendant was sought to be charged, or the offense of which the appellant was convicted. Under the law it is required that the allegations of an information be direct and positive in regard to the facts constituting the alleged offense. The facts cannot be supplied by inference, argument or intendment. (Rev. Laws, 7050–7052; *State* v. *Logan*, 1 Nev. 110; *People* v. *Gregg*, 13 N. Y. Supp. 114; 22 Cyc. 293, 295.) The manner in which a weapon is used very often determines its character, and whether under the circumstances it is a deadly weapon. (*State* v. *Napper*, 6 Nev. 113.) The information is uncertain as to whether the particular act constituting the particular assault sought to be charged was by striking or shooting. This is not permissible in criminal pleading. (22 Cyc. 296.) The charge in an indictment should be positively laid, and not inferentially. The want of a direct allegation of anything material in the description of the substance, nature or manner of the offense, cannot be supplied by intendment or implication. (Archibald, Cr. Pl. & Pr. 87.)

The information is defective in substance, in that it does not allege a present ability, because the present ability to inflict the injury is the gist of an assault, either under the statute or at common law. This contention may be raised for the first time in this court, and has not been waived by failure to raise it in the court below. (*State* v. *Trolson*, 21 Nev. 419.)

It was fundamental error for the trial court to refuse the request of appellant for a postponement of the trial in order that he might procure counsel at the time of the calling of the case. (Const. Nev., art. 1, sec. 8; *State ex rel. Huffaker* v. *Crosby*, 24 Nev. 115; *People* v. *Van Allen*, 55 N. Y. 33.) The denial of the request was an abuse of discretion. By the action of the court every possibility of the defendant having that fair and impartial trial guaranteed by law was swept away. (*Cave* v. *United States*, 100 Pac. 1118; *Clay Peters* v. *United States*, 33 Pac. 1031; *Dempsey* v. *United States*, 44 Pac. 382; *Stansbury* v. *United States*, 37 Pac. 1083.) A legal discretion is one that

is regulated and governed by well-established principles of law. (14 Cyc. 384.) An abuse of discretion is merely a discretion exercised to an end or purpose not justified by, and clearly against, reason and evidence. (1 Cyc. 219.)

It was reversible error for the court to instruct the jury that the law presumes an intent to kill from the use of a deadly weapon in a manner likely to cause death. The instruction entirely removed from the consideration of the jury the circumstances of the case, invading their province as triers of the facts. (*State* v. *Davis*, 14 Nev. 407; *State* v. *Newton*, 4 Nev. 410; *Reed* v. *United States*, 103 Pac. 371; *Frazier* v. *United States*, 103 Pac. 373.)

*J. H. White*, District Attorney, and *Geo. B. Thatcher*, Attorney-General, for Respondent:

Upon the record presented, the judgment of conviction should be in all matters affirmed. It is not claimed that the information is deficient in any of the requirements of section 7052, Revised Laws, except in the statement of "the offense charged." The function of an information or indictment is to apprise the defendant of the nature and character of the charge made against him, and the time and place where the alleged offense was committed, so as to enable him to defend against the particular charge alleged, protect him from a subsequent prosecution on the same charge, and "to enable the court to pronounce judgment upon a conviction according to the right of the case." It is sufficient if the information contain "a statement of the acts constituting the offense, in ordinary and concise language, and in such a manner as to enable a person of common understanding to know what is intended." (Rev. Laws, 7050; 22 Cyc. 295; *Peters* v. *United States*, 94 Fed. 127.) The indictment need be only "substantially" in the form provided by statute. (Rev. Laws, 7051; *State* v. *Anderson*, 3 Nev. 254.) "All provisions of law" applicable to prosecutions by indictment are equally applicable to prosecutions by information. (Stats. 1913, p. 294; *State* v. *Lovelace*, 29 Nev. 43.)

There is no merit in the claim that the information

does not allege the commission of a public offense. It is positively alleged in the information that the assault was made with a deadly weapon, to wit, a pistol loaded with gunpowder and leaden bullets, and that it was used within striking as well as shooting distance. The allegation that the defendant, "having the ability then and there so to do, did" commit and "assault with intent to kill," is exactly the equivalent of alleging "present ability" to commit the act charged. (*State* v. *O'Flaherty*, 7 Nev. 153.)

It is not true that appellant was denied the right to be represented by counsel, nor is it any more true that the state could be prevented from proceeding by his whims, vagaries, designs or subterfuges. Every presumption is in favor of the regularity of the proceedings in the trial court. (Rev. Laws, 7128; *State* v. *O'Flaherty*, 7 Nev. 153.)

There was no error in the instructions. (1 Bishop, Crim. Law, 5th ed. sec. 729; *State* v. *Daly*, 41 Or. 515; 1 McClain, Crim. Law, sec. 222; 12 Cyc. 148; *State* v. *Zichfeld*, 23 Nev. 304; *State* v. *Marks*, 15 Nev. 33; *People* v. *Devine*, 59 Cal. 630; *State* v. *Rodriguez*, 31 Nev. 342; *State* v. *Thompson*, 31 Nev. 209; *State* v. *Clark*, 32 Nev. 150; *State* v. *O'Connor*, 11 Nev. 416, 423.)

By the Court, COLEMAN, J.:

The defendant was convicted of an assault with a deadly weapon, and from the judgment of the court he appeals.

1, 2. The first ground urged for a reversal of the judgment is that the information is fatally defective, in that it fails to allege that the defendant had the present ability to make an assault upon the person named in the information. Our statute defines an assault as:

"An unlawful attempt, coupled with a present ability, to commit a violent injury on the person of another." (Rev. Laws, 6412.)

Section 7050, Revised Laws, 1912, reads:

"The indictment must contain the title of the action, specifying the name of the court to which the indictment is presented and the names of the parties, and a

statement of the acts constituting the offense, in ordinary and concise language and in such manner as to enable a person of common understanding to know what is intended."

The information in the case at bar charges:

"The said Hector MacKinnon, on the 7th day of December, 1916, or thereabouts, and before the filing of this information, in the county of Mineral, State of Nevada, he having the ability then and there so to do, did, wilfully, unlawfully, and feloniously, and without authority of law, with a deadly weapon, to wit, a pistol loaded with gunpowder and leaden bullets, which he, the said Hector MacKinnon, in his hand there and then had and held, assault one B. B. Shepherd, a human being, by shooting at and striking him, the said B. B. Shepherd, with the intent him, the said B. B. Shepherd, then and there to kill."

We do not understand that it is necessary that the information should allege defendant's present ability to make the assault in those words, but in words which convey the same meaning. Section 7050, Revised Laws, states that an offense may be charged in ordinary and concise language, and in such a manner as to enable a person of common understanding to know what is intended. We are unable to see how any person, of the least understanding could fail to grasp what was meant by the language of the information. It certainly shows that the defendant had the present ability to make the assault. The draftsman of the information, not being content with the language "he having the ability then and there so to do," also charged that the defendant, with a pistol loaded with gunpowder and leaden bullets, "in his hand there and then had and held," made the assault. We are unable to see just how a stronger allegation of present ability could have been made. Furthermore, courts do not look upon attacks of this character upon an information with the same favor when made for the first time on appeal as when made before a plea is entered. (*Ex Parte Breckenridge*, 34

Nev. 275, 118 Pac. 688, Ann. Cas. 1914B, 871), and when made for the first time on appeal, they will be ignored unless the information is fatally defective.

3, 4. It is also urged that the court erred in denying defendant's application for a continuance on the morning when the case was called for trial, to enable him to employ an attorney.  When defendant was arraigned he waived his right to counsel, and though he was thereafter brought into court on two occasions before the day of trial—once when he entered his plea of not guilty, and again when the case was set for trial—he did not signify his desire for counsel until the morning of the trial, more than two weeks after the order setting the case for trial had been made.  At the time the case was called for trial, and when all of the witnesses and jurors were in attendance for the trial, and after a preliminary order had been entered in the case, but before any of the jurors had been called into the jury box, the defendant asked that the case be continued until the following day to enable him to employ counsel.  The court denied the application and proceeded with the trial.  It is insisted that by its action the court denied defendant a constitutional right guaranteed him by section 8, article 1, Constitution of Nevada, which provides that:

"  *   *   *  The party accused shall be allowed to appear and defend in person, and with counsel, as in civil actions."

The purpose of this provision in our constitution is simply to guarantee to one charged with crime the privilege of being defended by counsel.  It is a privilege which he may exercise or waive.  If he waives it at one stage of the proceeding, he must act with a reasonable degree of diligence if he later desires to avail himself of it.  In other words, having once waived this privilege, a judgment will not be reversed because the court at a later date refused to grant a continuance so that counsel might be employed, unless the court abused its discretion.  In the case of *State* v. *Yoes,* 67 W. Va. 546, 68 S. E. 181, 140 Am. St. Rep. 978, the court said:

"The provision of the constitution, relating to the right of a prisoner to have the assistance of counsel, was inserted for the purpose of abrogating the common-law practice under which prisoners, accused of felony, were denied such right, and to restrain the legislature from denying it by statute. It differs in nature as well as form from the guaranty of trial by jury. The latter is prohibitory in form, while the other is permissive, and conditional upon the pleasure of the accused."

Under the circumstances of this case, we are of the opinion that there was no abuse of discretion on the part of the court in refusing to grant a continuance. To hold otherwise would put it in the power of persons charged with crime to materially hamper courts. Public policy will not justify such action. The defendant had ample opportunity to engage counsel, and his failure to do so was due to his own neglect.

5. It is also urged that the court erred in giving the following instruction:

"The court instructs the jury that a person must be presumed to intend to do that which he voluntarily and wilfully does in fact do, and he must be presumed to intend all the necessary, probable, and usual consequences of his own acts, and the jury are instructed that if they find that the defendant, Hector MacKinnon, did assault the person named in the information, to wit, B. B. Shepherd, with a deadly weapon, a loaded automatic pistol, in such a manner as was calculated to produce the death of the said B. B. Shepherd, the law presumes that such was the defendant's intention, and throws upon him the burden of showing facts in justification or excuse."

It is the contention of counsel that that portion of the instruction which states that "the law presumes" the intention of the defendant, is erroneous and prejudicial. This identical question was before us in the case of *State* v. *Pappas,* 39 Nev. 40, 152 Pac. 571, where we held it was reversible error to so instruct the jury. No suggestion has been made that the ruling in that case

is not sound, and we know of no reason for repudiating it. It controls in the case at bar. For the error committed in giving this instruction, it is ordered that the judgment be reversed, and that a new trial be granted the defendant.

McCARRAN, C. J.:

I concur in the order and so much of the opinion of Mr. Justice COLEMAN as reverses the case by reason of the giving by the trial court of the instruction relative to the law as to presumption of intent. I am not in accord, however, with the views taken by my learned associate on that phase of the case which has to do with the action of the trial court in denying the continuance asked for by the defendant for the purpose of securing counsel.

The record in this case, taken in its entirety, as disclosed by the minutes of the court made on the several occasions when the defendant was before the court prior to the date of trial, as well as the stenographic report of the trial itself, presents a history of acts and conduct on the part of appellant which to my mind removes the case from the effect of the rule as announced by courts following the same line of reasoning as that resorted to in the case of *State* v. *Yoes,* 67 W. Va. 546, 68 S. E. 181, 140 Am. St. Rep. 978, quoted from approvingly by Mr. Justice COLEMAN. I will not dwell at length upon that phase of the case, nor will I venture to augment the atmosphere which must have surrounded the trial of the cause in the lower court by any assertion, intimation, or conclusion. Suffice it to say in this respect that the jury presented its verdict of guilty of assault with a deadly weapon with intent to inflict bodily injury, and added thereto:

"We, the jury, recommend the defendant be examined as to his sanity."

On the occasion of the arraignment of appellant, it is disclosed by the minutes that the appellant waived counsel. Later and on the date assigned for appellant

to plead, it might be understood from the minutes that he again waived counsel and entered his plea of not guilty.   Later, when the case was called for trial on April 16, 1917, the transcript of the proceedings sets forth as follows:

"The Court—Is the defendant ready?

"The Defendant—Yes, sir; I am ready. (The roll of the venire was then called, and all being present, twelve persons were called into the jury box and duly sworn to answer questions as to their qualifications to serve as jurors in this case.)

"The Court—Call the first name, Mr. Clerk.

"The Clerk—Thomas T. Hickey.

"The Court—You may proceed with the examination.

"Mr. MacKinnon (the defendant).

"The Defendant—Your honor, I have appeared before you five times now, haven't I?   This is my sixth time here to appear before you on this trial.   Now that you have prepared to go ahead with it, I ask for time to get counsel.

"The Court—Every time you have been in court, Mr. MacKinnon, you have been clamoring for a trial, and I set the case for trial at this time.

"The Defendant—Yes, sir; why didn't you go ahead with it?   It is up to you.

"The Court—We are ready to proceed now.

"The Defendant—Well, I ask for time to get counsel. That will be tomorrow.

"The Court—The defendant was informed of his rights, and stated that he did not desire counsel, and we are here now with the jury, so we will proceed.

"The Defendant—I was ready to proceed five times with my own case, but you wasn't ready.   Therefore I was detained here, kept in jail for four months waiting this trial.   How was I to know that you were going to bring on a trial?

"The Court—The motion for a continuance is denied. You may examine the jurors.   If the defendant has no questions to propound to the venireman Hickey, the state may proceed."

On several occasions during the course of the trial which followed, it appears that appellant asked for the assistance of counsel.

Of all the rights secured to one accused of crime, it is, I think, quite safe to say that there is none more important or vital than that of being represented by counsel. The evolution of the law has developed no more important or sacred privilege than that which contemplates justice meted out to one accused of crime, and in no phase of the law has there been an evolution more important than that which, having its inception in the thought and reasoning of minds grounded in principles of justice, culminated in the English statutes (St. 6 and 7, William III and IV, cc. 3, 114), establishing the right for persons accused of crime to be represented at their trial by counsel. How these early English statutes came into existence may well be conjectured from the history of the times, as well as from the remarks of members of the British House of Commons during the debates preceding the passage of the acts. We read of one of the members expressing himself thus:

"I have myself often seen persons I thought innocent convicted, and the guilty escape, for want of some acute and intelligent counsel to show the bearings of the different circumstances on the conduct and situation of the prisoner."

Another member of that great branch of the British Parliament, in discussing the question then before the house, said:

"It has lately been my lot to try two prisoners who were deaf and dumb and who could only be made to understand what was passing by the signs of their friends. The cases were clear and simple; but if they had been circumstantial cases, in what a situation would the judge and jury be placed, when the prisoner could have no counsel to plead for him."

To insure against those abuses in criminal prosecutions that had been manifest in the early British courts and which were not remedied until 1836 and then only by the passage of the statutes heretofore referred to,

the Sixth Amendment to the Constitution of the United States was promulgated, and in that it is provided that:

"In all criminal prosecutions the accused shall enjoy the right * * * to have the assistance of counsel for his defense."

The bill of rights of nearly every state in the union contains some similar provision, and by section 8, article 1, of our organic law it is provided:

"In any trial in any court whatever, the party accused shall be allowed to appear and defend in person, and with counsel as in civil actions."

Mr. Cooley, in his work on Constitutional Limitations, says:

"With us it is a universal principle of constitutional law that the prisoner shall be allowed a defense by counsel." (Cooley's Constitutional Limitations, 7th ed. p. 477.)

A provision in the constitution of the State of California of the same import as that found in our constitution (art. 1, sec. 13) was called in question before the supreme court of that state in the case of *People* v. *Napthaly*, 105 Cal. 641, 39 Pac. 29. There a party brought before a committing magistrate for preliminary examination had been denied the right to be represented by counsel. In that case it appears that the defendant was himself an attorney, and the court, commenting on this fact, said:

"The very fact that the defendant asked for a continuance to procure counsel is evidence of his knowledge of his right thereto, and obviated the necessity of his being informed thereof. Thus far and no more. Under the constitution and law a lawyer who is accused of crime is equally entitled in every stage of his trial to the presence and aid of counsel and ('to appear and defend, in person and with counsel') with other persons. The rights of individuals in this respect are not to be gaged by their profession or occupation."

Continuing, the court said:

"Whatever the rule may have been at common law, under our law every person accused of a felony is entitled

to the aid of counsel, whether imprisoned or admitted to bail, and a refusal of an opportunity to procure such counsel amounts to a deprivation of an important right essential to his safety."

The doctrine enunciated in this case was approved in the case of *People* v. *Crowley,* 13 Cal. App. 322, 109 Pac. 493.

The constitution of the State of New York (art. 1, sec. 6) contains the provision:

"In any trial in any court whatever, the party accused shall be allowed to appear and defend in person and with counsel as in civil actions."

This provision is in language identical to that contained in our own constitution. In the case of *People* v. *Abetti,* 152 N. Y. Supp. 890, the Court of General Sessions had before it the question of the right of a party on trial for a misdemeanor to be represented by counsel. There the defendants, being without knowledge of the English language, were compelled to testify through an interpreter. It appears that after witnesses for the prosecution had testified to facts against the defendants, the latter, through the interpreter, said, "We want to hire a lawyer," to which the magistrate replied:

"They must go on now; they are charged, not with a felony, but with disorderly conduct. They are not entitled to a lawyer, but they are entitled to cross-examine these police officers, if they choose, and that is all. I want you to ask them if they wish to cross-examine the officers."

The court in reviewing the case held that the refusal of the magistrate to give the defendants an opportunity to employ counsel under the circumstances was reversible error. The court declared in effect that although the constitutional provision directing the magistrate to immediately inform a defendant of his right to employ counsel does not apply to summary proceedings such as a prosecution for misdemeanor, nevertheless the better practice is for such magistrate to give such information in all cases.

This same question was considered by the Criminal

Court of Appeals of Oklahoma in the case of *Stanley Baker* v. *State,* 9 Okl. Cr. 62, 130 Pac. 820. There the organic law provides (Bill of Rights, art. 2, sec. 20) :

"In all criminal prosecutions the accused shall have the right  *  *  *  to be heard by himself and counsel."

In that instance the request of the defendant for counsel had been complied with by the trial court in the appointment of one who had not previously been admitted to the bar. The court held that the term "counsel" as used in this respect means a person who has been admitted as an attorney and counselor at law in the state, and it was the duty of the trial court to assign counsel duly authorized under the law to act as such. In dwelling upon the general principle underlying the right of one accused of crime to be represented by counsel, the court said:

"So deeply ingrafted in our criminal jurisprudence has this great right become that none are so low or so poor but they may rely upon it."

In a very early case, the Supreme Court of Louisiana, taking cognizance of a state constitutional provision similar to that of ours, and referring to the provision of the constitution of the United States, reversed the case of *State* v. *Cummings,* 5 La. Ann. 330 for the reason that when the jury were about to be sworn in the trial court, that court refused to allow counsel for the accused to consult with him and aid him in the exercise of his right of peremptory challenge. The court, after referring to the history of such constitutional provisions and to the common law of England which such provisions were intended to remedy, said:

"This led to the guaranty of the right to counsel in our liberal constitutions, and the right should be liberally construed."

To the same effect was the case of *State* v. *Summers,* 4 La. Ann. 26.

The cogency of the reasoning indulged in by the Supreme Court of California in the case of *People* v. *Goldenson,* 76 Cal. 328, 19 Pac. 161, is most applicable

to the question here. There it appears that the regularly
retained counsel for the defendant, because the court
refused to continue the case to suit their convenience,
withdrew from the case, and the court appointed other
counsel to represent the defendant. On appeal it was
contended that the court had no authority to appoint
attorney to defend the party, because he had already
employed and had acting for him an attorney of his own
choice, and because he neither desired nor was he unable
to employ another. The contention was asserted upon
the ground that it is only when the prisoner desires
counsel and is unable to employ one that the court is
authorized to appoint. To this contention, Mr. Justice
Patterson, speaking for the court, replied:

"But it was not a question whether he desired an
attorney and had the means to employ one. The ques-
tion was, Who should represent him? He insisted upon
having the case continued to suit the convenience of the
attorney he had employed. This could not be done—at
least, that was the ruling, and all were bound to respect
it. It was then and still is claimed in his defense, by
his relatives and his retained attorneys, that he was
insane. Whatever may be the right of a defendant
where there is no question of insanity, the court acted,
we think, in accordance with every principle of law,
justice, and humanity in this case in selecting attorneys
to look after the interests of the prisoner, who at the
time by all the affidavits was represented as demented
and unable to know right from wrong."

The court made this assertion as being in the spirit
of the Sixth Amendment to the Constitution of the
United States, to which I have referred, and as being in
keeping with the spirit of article 1, section 13, of the
constitution of the State of California already quoted.

I would not be understood as denying the proposition
asserted by so many courts, that the constitutional right
of being represented by counsel, granted to every one
accused of crime, may be waived by a competent person
who may appear fully cognizant of his situation and

mentally capable of appreciating its seriousness. The right of one to waive this constitutional privilege is a right which not only affects the individual exercising it, but likewise the state. The life and liberty of every individual is a part of the state itself, inasmuch as the latter holds a protectorate over it. A just administration of the laws is a function for the state to perform, and where one accused of a violation of some of the rules or ordinances of organized government is brought before a bar of justice, the state, as the representative of that organized government, is interested in the welfare of the individual, as well as in the upholding the dignity and majesty of the law. If the party accused appears to be incapable of realizing his position, the gravity of the charge against him, or the consequences, or if it appear, as in the instance presented by the record in the case at bar, that the seriousness of his situation he is incapable of appreciating, then his right to waive his constitutional privilege of counsel is to my mind a most questionable one.

In the case at bar, whatever peculiarity of temperament or mental eccentricity was observable by the jury, their verdict in this respect, together with the conduct of the appellant and his utterances to the court, are most significant, to say the least. When the case was called for trial, and at the first occasion on which it was necessary for the appellant to act in the way of conducting such trial, the record discloses him as helpless and calling for counsel. I can view the situation in no other light than that it was the duty of the court at that juncture of the case to grant the continuance asked for and to see to it that at the resumption of the trial the appellant was represented by counsel.