# THE SUPREME COURT

### OF THE

## STATE OF NEVADA

### OCTOBER TERM, 1911

[No. 2001]

## IN THE MATTER OF THE APPLICATION OF J. C. BRECK-ENRIDGE FOR A WRIT OF HABEAS CORPUS.

1. HABEAS CORPUS—COMPLAINT—"INN"—"HOTEL."
    The charge of a complaint that accused "did keep and manage the Big Meadow Hotel, a house of public resort, in a disorderly manner," is a sufficient charge, at least against collateral attack of the judgment by *habeas corpus*, of the offense denounced by Comp. Laws, 4920, of keeping an "inn" in a disorderly manner, as it must be assumed that a "hotel" is an "inn."

2. CRIMINAL LAW—JUDGMENT—CLERICAL MISTAKE—CORRECTION.
    The sentence imposed by a justice being imprisonment for thirty days, his entry of judgment of imprisonment for the term of "thirty," omitting the word "days," is merely a clerical mistake, which may be corrected by him in the absence of defendant.

3. IDEM—COMMITMENT AFTER DISMISSAL OF APPEAL—JUSTICE COURT.
    Commitment by a justice under his judgment is valid, though appeal was taken from the justice to the district court, such court having dismissed the appeal, even if the dismissal was erroneous; it being an error which was within the jurisdiction of that court, and a final disposition of the case there.

ORIGINAL PROCEEDING. Application of J. C. Breckenridge for a writ of *habeas corpus*. **Application denied.**

The facts sufficiently appear in the opinion.

*James Glynn*, for Petitioner.

*Cleveland H. Baker*, Attorney-General, for the State.

*Per Curiam:*

The petitioner was convicted and sentenced under a complaint containing the following statements: "Peter J. Haynes being duly sworn, complains and says that the crime of keeping and managing a disorderly house and inn has been committed in said County of Humboldt, and accuses the above-named defendant thereof; committed as follows, to wit: The said defendant, J. C. Breckenridge, on the 10th day of April, A. D. 1911, or thereabouts, and theretofore, at the County of Humboldt, State of Nevada, did keep and manage the Big Meadow Hotel, a house of public resort in the town of Lovelock, in a disorderly manner, by which the peace, comfort, and decency of the immediate neighborhood is and has been disturbed. * * *"

It is claimed that this complaint does not state facts sufficient to constitute a cause of action under section 4920 of the Compiled Laws, which is as follows: "Any person in this state who shall keep any disorderly house, or any house of public resort, by which the peace, comfort, or decency of the immediate neighborhood, or of any family thereof, is habitually disturbed, or who shall keep any inn in a disorderly manner, is guilty of a misdemeanor. * * *"

It is strongly urged that it was necessary to allege that the peace, comfort, or decency of the neighborhood was habitually disturbed. We need not determine whether the words "habitually disturbed" would have to be included in the allegation in order to make it sufficient, if no attempt were made in the complaint to charge more than the first offense provided by the statute, and the question

was before us on demurrer, or on this application for a
a writ of *habeas corpus;* for it will be noticed that after
passing these words the statute provides that any person
" who shall keep any inn in a disorderly manner is guilty
of a misdemeanor," and, as the complaint does charge that
the accused "did keep and manage the Big Meadow Hotel,
a house of public resort, in a disorderly manner," it must
be assumed that the hotel is an inn, and that the allega-
tion comes within the words of the statute, making it an
offense for any person to keep an inn in a disorderly man-
ner.    The definitions and decisions indicating that a hotel
is an inn are numerous.  (4 Words and Phrases, 3349, 3624,
3625; *Fruchey* v. *Eagleson,* 15 Ind. App. 88, 43 N. E. 146,
147; *City of St. Louis* v. *Siegrist,* 46 Mo. 593, 595; *People* v.
*Jones,* 54 Barb. (N. Y.) 311, 316; *Bonner* v. *Welborn,* 7 Ga.
296, 334, 337; *Bunn* v. *Johnson,* 77 Mo. App. 596, 599;
*Comer* v. *State,* 26 Tex. App. 509, 10 S. W. 106, 107; *Hall*
v. *State,* 4 Har. (Del.) 132, 146; *Pinkerton* v. *Woodward,*
33 Cal. 557, 560, 91 Am. Dec. 657; *Dickerson* v. *Rogers,* 23
Tenn. (4 Humph.) 179, 183, 40 Am. Dec. 642; *Ingalsbee*
v. *Wood,* 36 Barb. (N. Y.) 452, 462; *Walling* v. *Potter,* 35
Conn. 183, 185; *Thompson* v. *Lacy,* 3 Barn. & Ald. 283, 287;
*Carter* v. *Hobbs,* 12 Mich. 52, 56, 83 Am. Dec. 762; Charge
to Grand Jury (U. S.) 30 Fed. Cas. 999; *Wilkins* v. *Earle,*
26 N. Y. Super. Ct. (3 Rob.) 352, 365; *Pullman Palace Car*
v. *Lowe,* 28 Neb. 239, 44 N. W. 226, 227, 6 L. R. A. 809, 26
Am. St. Rep. 325; *Voss* v. *Wagner Palace Car Co.,* 16 Ind.
App. 271, 43 N. E. 20, 28, 44 N. E. 1010.)

In a complaint on an indictment in a criminal case or a
pleading in a civil case, the same specific allegations are
not always required to support a judgment that would
be exacted if the question were being considered upon
demurrer.  If the allegations follow substantially the
language of the statute, and show in a general way to a
person of ordinary understanding the statutory offense
intended, they ought to be deemed sufficient.  In *State*
v. *Raymond,* 34 Nev. 203, 204, we said: "It has been the
tendency of courts in recent years to be less technical
than formerly in construing indictments, especially so

where no demurrer was interposed to the indictment and an opportunity offered to cure the defect prior to trial. In *State* v. *Harrington*, 9 Nev. 91, this court, quoting an indictment for murder, said: 'Its form is argumentative, and this would have been a fatal defect upon special demurrer. The objection, however, was not taken, and, the imperfection being of form, and not of substance, is cured by the verdict.' In a case where the sufficiency of the indictment was raised for the first time upon appeal, this court, in the recent case of *State* v. *Hughes*, 31 Nev. 270, said: 'The indictment, it must be admitted, is far from being a model. Where, however, the sufficiency of the indictment is questioned for the first time upon appeal, it should not be held insufficient to support the judgment, unless it is so defective that by no construction within the reasonable limits of the language used can it be said to charge the offense for which the defendant was convicted'—citing *State* v. *Lovelace*, 29 Nev. 43."

In *Howard* v. *People*, 27 Colo. 400, 61 Pac. 595, it was held that an information for keeping a disorderly house need not specify the particular acts of disorderly conduct complained of, and that it is sufficient if the offense is charged in the language of the statute; and the court cited *Leary* v. *State*, 39 Ind. 544; *State* v. *Hayward*, 83 Mo. 299; *U. S.* v. *Cruikshank, et al.*, 92 U. S. 542, 23 L. Ed. 588.

In *Dimmick* v. *Tomkins*, 194 U. S. 551, 24 Sup. Ct. 783, 48 L. Ed. 1110, the Supreme Court of the United States said: "It is also objected that the facts charged in either the first or the fourth count of the indictment did not constitute any offense under the statute, and that the sentence was therefore without justification. * * * It is not, however, necessary in this case to decide the point, for the indictment charged enough to show the general character of the crime, and that it was within the jurisdiction of the court to try and to punish for the offense sought to be set forth in the indictment. If it erroneously held that the indictment was sufficient to charge the offense, the decision was within the jurisdiction of

the court to make, and could not be reexamined on *habeas corpus.* The writ cannot be made to do the office of a writ of error. Even though there were, therefore, a lack of technical precision in the indictment in failing to charge with sufficient certainty and fullness some particular fact, the holding by the trial court that the indictment was sufficient would be simply an error of law, and not one which could be reexamined on *habeas corpus.* (*Ex Parte Parks,* 93 U. S. 18, 23 L. Ed. 787; *Re Coy,* 127 U. S. 731, 8 Sup. Ct. 1263, 32 L. Ed. 274; *Re Eckart,* 166 U. S. 481, 17 Sup. Ct. 638, 41 L. Ed. 1085.)"

We do not wish to be understood as holding that the complaint would not have been sufficient upon demurrer. This case is different from one where the facts intended to be charged constituted no offense under the statute or the constitution. (*Ex Parte Rickey,* 31 Nev. 82, 135 Am. St. Rep. 651.)

The original entry of the judgment ordered that the defendant be imprisoned in the county jail "for a term of thirty and that he be fined in the amount of two hundred dollars." Thereafter, in the defendant's absence, and while he was detained in the county jail, the justice of the peace inserted the word "days" after the word "thirty." It is contended that this was error, but it is not claimed that the judgment as originally pronounced did not provide for thirty days confinement in the county jail. It may be conceded that, if the sentence as originally passed fixed as punishment confinement in the county jail for thirty hours, the court could not later, in the absence of the defendant, change the judgment so as to impose thirty days confinement upon the defendant. The fixing of the punishment and the announcement of the judgment were within the judicial powers of the court; the entry of the judgment was a mere ministerial act, and the omission of the word "days" was merely a clerical mistake, which could be corrected to conform to the sentence rendered. We are unable to see how, under the circumstances of this case, the entry or correction by the justice of the peace of the judgment to conform

to the sentence rendered, after its rendition and in the absence of the convicted person, could prejudice him, or deprive him of a substantial right. (*State* v. *Depoister*, 21 Nev. 107; *State* v. *M. J. Smith*, 33 Nev. 458.) A judgment, when pronounced by the court, is as final as when it is entered and recorded. (*Kehoe* v. *Blethen*, 10 Nev. 445; *Central Trust Co.* v. *Holmes*, 30 Nev. 437.) A mere clerical error or mistake arising from inadvertence may be corrected by the court on its own motion, so as to make the judgment speak the truth, even after the term. (23 Cyc. 864, 876, and cases cited; *Ehrhardt* v. *Curry*, 7 Nev. 222; *Humboldt M. & M. Co.* v. *Terry*, 11 Nev. 237.)

In 23 Cyc., at page 873, it is said: "In respect to the extent and character of the relief granted, as in other matters, if the entry of judgment does not correspond with the judgment actually intended and pronounced by the court, it may be amended by correcting any clerical mistake, or supplying matters inadvertently omitted, or striking out clauses erroneously inserted, or by making such changes as are necessary to make it conform to the pleadings or the verdict."

At sections 53 and 53a of Freeman on Judgments, it is stated: "Though the nature of a final adjudication in a justice's court is in no respect different from that of a court of record, several causes uniting have produced rules of construction by which the records of the former court are scrutinized with less severity than those of the latter. * * * In New York, justices of the peace are required to enter their judgments in their dockets within four days after the rendition thereof. But, under the general rule that the entry of the judgment is a ministerial act, the failure of a justice to comply with this part of the law within the time required has, by repeated decisions, been held to leave the judgment in full force. * * * In Maine, a justice of the peace, after being out of office for three or four years, completed the record of a case tried during his official term, by writing up a judgment in his judgment book. Of this transaction, Mellen, C. J., said: 'A magistrate does not act judicially in mak-

ing up and completing his record.   In doing this, he per-
forms himself what this court does through the agency
of its clerk.   It is a mere ministerial act.   The judgment
is regular.'   (*Fish* v. *Emerson*, 44 N.Y. 377; *Matthews* v.
*Houghton*, 11 Me. 377; *Felter* v. *Mulliner*, 2 Johns. [N.Y.]
181.)"

In *Lynch* v. *Kelly*, 41 Cal. 232, it was held that an exe-
cution issued by the justice, which recites a judgment and
a sale under such execution after verdict, are not void by
reason of his failure to enter the judgment.

In *Knefel* v. *People*, 187 Ill. 212, 58 N. E. 388, 79 Am. St.
Rep. 217, it was held that a clerical error in the record of
a criminal case, showing that a motion for a new trial
had been overruled, when it was in fact allowed, may be
amended at a subsequent term to speak the truth.

In *Gore* v. *People*, 162 Ill. 259, 44 N. E. 500, the record
was amended so as to show the return of the indictment
in open court by the grand jury in a body.

In *State* v. *Wyatt*, 6 La. Ann. 701, it was held that a
judgment that was not signed at the term of court at
which it was rendered might be signed at the next term
*nunc pro tunc.*

In *State* v. *Primm*, 61 Mo. 166, it was held that a court
may, at a subsequent term, set right mere forms in its
judgment, or. correct mere clerical errors, so as to con-
form the record to the truth; and that judgments in
criminal cases are not objectionable because transcribed
after the proceedings are over and during the absence of
the accused.

In *Marks* v. *State*, 135 Ala. 69, 33 South. 657, it was
held that, where the clerk of the court in entering a
judgment of conviction had omitted from the minutes a
formal adjudication by the court of the guilt of the
defendant, the judgment might be amended *nunc pro
tunc* at a subsequent term, so as to make it contain a
formal adjudication of the defendant's guilt.

In *People* v. *Lenon*, 79 Cal. 625, 631, 21 Pac. 967, it was
held if the accused is in court when judgment is pro-
nounced it is all that is required by the penal code; and,

if the clerk fails to enter the judgment at the time, the court may afterwards order it entered *nunc pro tunc* in the absence of the defendant.

In *State* v. *Folke*, 2 La. Ann. 744, it was said *per curiam:* "The power of correcting the minutes of its proceedings, so as to make the entries conform to the truth whenever errors or omissions are satisfactorily shown, is inherent in every court. In criminal proceedings all ministerial acts are amendable at any time."

In 12 Cyc., at page 387, it is said: "The presence of clerical errors in the record of the judgment or the omission of immaterial recitals does not invalidate the judgment. * * * The general rule that, in the absence of statute, no amendment can be made in the record after the term has expired, does not apply to cases where the record itself affords the means for its correction, or to the correction of merely clerical errors; and in some jurisdictions the modern decisions have relaxed the rule in other cases."

It is further contended that the imprisonment of the petitioner is unlawful, for the reason that an appeal was perfected from the justice's court to the district court of Humboldt County, and that the justice's court was thereafter without jurisdiction to commit the petitioner, notwithstanding the fact that the district court had dismissed the appeal, for the reason that, the appeal having been regularly taken, the justice's court was ousted of jurisdiction, and the district court was without jurisdiction to dismiss the appeal. Without regard to whether or not the appeal was regularly taken from the justice's court to the district court, the district court had power to dismiss the appeal; and, if such dismissal was erroneous, it was nevertheless an error within the jurisdiction of the court, and was a final disposition of the case in that court. (*Andrews* v. *Cook*, 28 Nev. 265; *Nevada Central R. Co.* v. *District Court*, 21 Nev. 411; *Floral Springs Co.* v. *Rives*, 14 Nev. 435; *State* v. *Wright*, 4 Nev. 119.) The effect of the dismissal of the appeal was to leave the judgment of

the justice's court in full force and effect, and the commitment in pursuance thereof was valid.

The application for the discharge of the petitioner is denied.