THE STATE OF NEVADA, Respondent, *v.* HOBISON DEWEY HURLEY, also known as STEPHEN HURLEY, also known as H. D. HURLEY, APPELLANT.

No. 3560

October 24, 1949.          210 P.2d 922.

*Carville & Carville,* of Reno, and *Horace Appel,* of Los Angeles, California, for Appellant.

*Alan Bible,* Attorney General, *W. T. Mathews, Geo. P. Annand* and *Robert L. McDonald,* Deputy Attorneys General, *Robert E. Jones,* District Attorney of Clark County, and *A. W. Ham, Jr.,* Deputy District Attorney, for Respondent.

## O P I N I O N

By the Court, BADT, J.:

Appellant was convicted on October 7, 1948, in Clark County, Nevada, of the crime of obtaining money under false pretenses, committed September 20, 1946. He has appealed from the judgment and from the order denying his motion for a new trial. The sole point presented to this court in support of the appeal is that the indictment, by which the defendant was charged, fails to allege sufficient facts to constitute a criminal offense. The indictment reads as follows: (Repetition in words of figures used is deleted.)

"Defendant, Stephen Hurley, also known as H. D. Hurley, above-named, is accused by the Grand Jury of the County of Clark, State of Nevada, in the name and by authority of the State of Nevada, of a felony, to-wit: The crime of obtaining money under false pretenses in violation of Section 10391, N.C.L., committed as follows:

"The said Stephen Hurley, on or about the 20th day of September, 1946, or thereabouts, and before the filing of this indictment in the County of Clark, State of Nevada, then and there being in said County and State, and then and there being an agent and officer of the Las Vegas Brewing Co., a corporation organized and doing business under the laws of the State of Nevada, and then and there intending to cheat and defraud Jerome Jerome and his wife, Helen Jerome, did then and there knowingly and designedly falsely represent and state to Helen Jerome and to Jerome Jerome that the capital stock of said Las Vegas Brewing Co. was well worth the price of $1.00 per share of Common stock and $100.00 per share of Preferred stock, or $101.00 per unit of one share of Common stock to one share of Preferred stock; that if the said Jerome Jerome or Helen Jerome would purchase some shares of said stock in said corporation from the defendant, Stephen Hurley, at a price of $101.00

per unit, that the money so paid for said stock would remain on deposit in escrow with the Pioneer Title Insurance and Trust Company at Las Vegas, Nevada, until such time as the said Las Vegas Brewing Co. plant was under construction in Las Vegas, Nevada, and that arrangements had been made with said Pioneer Title Insurance and Trust Company for such an escrow; that a 'sound' (Accoustics) engineer from Hollywood, California, by the name of McAllister had purchased 3,125 shares of Common stock of said corporation; whereas, in truth and in fact, as the said defendant, Stephen Hurley, then and there well knew, the said representations and statements were false and untrue; that the capital stock was highly speculative, had no marketable value, and that no moneys taken in for the sale of said stock remained on deposit, in escrow, with the Pioneer Title Insurance and Trust Company, and that no arrangements had been made by the defendant, Stephen Hurley, or anyone else, for said funds to remain on deposit in escrow with the Pioneer Title Insurance and Trust Company; that said 'sound' engineer named McAllister had not in fact purchased any stock of the said Las Vegas Brewing Co.; that the said Jerome Jerome and his wife, Helen Jerome, believing said statements and representations on the part of defendant, and relying thereon, and as the result thereof, did then and there purchase five shares of Common Stock and five shares of Preferred stock of the Las Vegas Brewing Co. from the defendant, Stephen Hurley, and did then and there give to the Pioneer Title Insurance and Trust Company for the account of the defendant, Stephen Hurley, and at the specific request of the defendant, Stephen Hurley, their own personal check, totalling $505.00 drawn on the First National Bank of Nevada, Las Vegas Branch, Las Vegas, Nevada, dated September 24, 1946, and, subsequently, Jerome Jerome and his wife, Helen Jerome, in good faith, and relying on the statements and representations on the part of defendant, and at the specific

request of the defendant, Stephen Hurley, did then and there purchase 3,125 shares of Common stock of the Las Vegas Brewing Co., tendering in payment therefor their personal check drawn on the First National Bank of Nevada, Las Vegas Branch, Las Vegas, Nevada, in the sum of $3,125.00, dated October 25, 1946, for said stock, and that the said defendant, Stephen Hurley, by means of said false pretenses did then and there and in the manner aforesaid obtain from Jerome Jerome and Helen Jerome, his wife, the sum of $3,630.00, lawful money of the United States; that said checks were deposited with the First National Bank of Nevada, Las Vegas Branch, Las Vegas, Nevada, to the credit of the Las Vegas Brewing Co. and were honored by the drawee Bank when presented for payment in due course, and said sums were deducted from the account of Jerome Jerome and Helen Jerome at the drawee Bank; that said defendant, Stephen Hurley, drew said moneys out of the account of the Las Vegas Brewing Co. at the First National Bank of Nevada, Las Vegas Branch, Las Vegas, Nevada, and appropriated the same for his own use and purposes, contrary to the form of the statute in such case made and provided."

Section 10391, N.C.L., referred to in the indictment reads, in part, as follows:

"Every person who shall knowingly and designedly, by any false pretense or pretenses, obtain from any other person or persons any chose in action, money, goods, wares, chattels, effects, or other valuable thing, with intent to cheat or defraud any person or persons of the same shall be deemed a cheat, and on conviction shall be imprisoned in the state prison not more than ten years nor less than one year  *  *  *."

Section 10865, N.C.L., defining what shall be a "sufficient description of the offense," to be contained in the indictment, reads as follows:

"In every complaint, indictment or information for obtaining or attempting to obtain any chose in action,

money, goods, wares, chattels, effects or other valuable things, by false representations or by causing or procuring others to report falsely of his wealth or mercantile character, or by any false pretense whatsoever, it shall be a sufficient description of the offense to charge that the accused did, at a certain time and place, unlawfully obtain, or attempt to obtain, as the case may be, from A. B. his money or property, describing it generally, where it can be done, by means and by use of a cheat, or fraud, or trick, or deception, or false representation, or false pretense, or confidence game, or false and bogus check, or instrument, or coin, or metal, as the case may be, with intent to cheat and defraud the said A. B."

Upon the return of the verdict on October 2, 1948 the court set October 7, 1948 as the date for pronouncing judgment. On that date the defendant presented a motion for new trial and a motion in arrest of judgment. Both motions were denied, judgment was pronounced and defendant immediately filed his notice of appeal. The motion in arrest of judgment was based upon the ground that the facts stated in the indictment did not constitute a public offense. The record does not disclose that any objection to the sufficiency of the indictment had theretofore been made.

Appellant's analysis of the indictment is that the same in essence charges three pretenses: (1) That the common stock was "well worth" the price of $1 per share and that the unit of one share of common and one share of preferred was well worth $101 per unit—the falsity of the representation being that the stock was "highly speculative, had no marketable value"; (2) "that the money so paid for said stock would remain on deposit in escrow with the Pioneer Title Insurance and Trust Company at Las Vegas, Nevada, until such time as the said Las Vegas Brewing Co. plant was under construction in Las Vegas, Nevada, and that arrangements had been made with said Pioneer Title Insurance and Trust Company for such an escrow"—the falsity of the representation being "that no moneys taken in for the sale

of said stock remained on deposit, in escrow, with the Pioneer Title Insurance and Trust Company, and that no arrangements had been made by the defendant, Stephen Hurley, or anyone else, for said funds to remain on deposit in escrow with the Pioneer Title Insurance and Trust Company"; and (3) "that a 'sound' (accoustics) engineer from Hollywood, California, by the name of McAllister had purchased 3,125 shares" of said common stock, whereas said McAllister had not in fact purchased any of such stock.

Adopting for the moment appellant's analysis of the indictment and assuming, but not deciding, that appellant is correct in characterizing the first alleged false pretense as simply an opinion of value and his characterization of the third alleged false pretense as lacking in causal connection and inducement, to accomplish the end that the Jeromes should part with $3,630, and did part with $3,630, for the Las Vegas Brewing Company stock, we are satisfied that the statutory offense was charged in the second count.

Appellant contends that there is a complete lack of causal connection, inducement or materiality in the representation that arrangements had been made for the escrow, whereas no such arrangement had been made; that no benefit or detriment could result to the Jeromes by the existence or nonexistence of such arrangement; that no representation is alleged that the Jeromes would get their money back after the lapse of time if construction did not begin; that the representation that the escrow arrangement had been made could not be an inducing factor to cause any reasonable person to part with his money. We are unable to agree with this argument. A more prudent person might have demanded an inspection of written escrow instructions to the bank. He might, upon examining such escrow instructions, if any, have required greater restrictions, limitations or other protection before the bank could release any proceeds of stock sales thus placed in escrow. The fact that the Jeromes did not take these precautions throws no

cloak of protection about the defendant. The defendant represented that an escrow had been arranged for. This representation was false. No arrangement had been made for the holding of the funds in escrow. Such lack permitted the immediate withdrawal of the money by the defendant. Nor is this affected by the fact, emphasized by appellant, that the deposit was made to the credit of the brewing company, thereafter withdrawn by appellant. The indictment alleged that appellant was an officer and agent of the brewing company. Appellant could have transferred the deposit a half dozen times without destroying the fact that he appropriated the money to his own use. The representation that the arrangement had been made for deposit of the funds in escrow is alleged in the indictment to have been believed and relied upon by Jerome, who, as a result thereof, purchased the stock and parted with his money.

■ Although originally, and under the common law, the term "escrow" was applied to instruments for the conveyance of land, 30 C.J.S., Escrows, sec. 3, page 1193, it is now commonly applied to the deposit of any written instrument and to the deposit of money. Under the allegations of the indictment the Jeromes deposited their money by reason of an actual representation, false in fact, from which they drew the assurance that it would remain in escrow. Uncertain as the condition or contingency or terms of the escrow might have been, the representation or false pretense would, if true, have excluded the chance of what actually happened, namely, that the defendant could withdraw the money for his own use at any time.

■ We revert to the fact, as disclosed by the record, that the sufficiency of the indictment was not attacked until defendant moved in arrest of judgment after the jury had returned its verdict. Without foreclosing the right of appellant thus to raise the point for the first time, State v. Trolson, 21 Nev. 419, 32 P. 930, the inclination for a rigidly strict construction of the requirements for the contents of the indictment is not so great

when thus first raised. This court held an indictment good in State v. Raymond, 34 Nev. 198, 117 P. 17, "especially so when no objection was made thereto until after verdict." The court referred to the recent tendency to be less technical than formerly in construing indictments "especially so where no demurrer was interposed to the indictment and an opportunity afforded to cure the defect prior to trial." In State v. Hughes, 31 Nev. 270, 102 P. 562, this court said:

"The indictment, it must be admitted, is far from being a model. Where, however, the sufficiency of an indictment is questioned for the first time upon appeal, it will not be held insufficient to support the judgment, unless it is so defective that by no construction, within the reasonable limits of the language used, can it be said to charge the offense for which the defendant was convicted." Virtually the same is said by this court in State v. Lovelace, 29 Nev. 43, 83 P. 330, referred to in the Hughes case.

Section 10857, N.C.L., provides that the information "shall be sufficient if it can be understood therefrom * · * *:" Here follow provisions 1 to 5 having to do with the authority of the court, the grand jury, recitals of the name of the defendant and the time and place of the commission of the offense. Subdivisions 6 and 7 read as follows:

"6. That the act or omission charged as the offense is clearly and distinctly set forth in ordinary and concise language, without repetition and in such a manner as to enable a person of common understanding to know what is intended.

"7. That the act or omission charged as the offense is stated with such a degree of certainty as to enable the court to pronounce judgment upon a conviction, according to the right of the case."

What we have said above indicates our conclusion that the requirements of this section have been met. Appellant places great reliance on In re Waterman, 29 Nev. 288, 89 P. 291, 11 L.R.A.,N.S., 424, 13 Ann.Cas. 926, in

which this court, through Mr. Justice SWEENEY, granted a writ of habeas corpus to the petitioner who was being held under an executive order honoring a requisition under an Iowa indictment. The charge was that of obtaining money by false pretenses. The court in releasing the petitioner for the insufficiency of the indictment called attention to the absence of any allegation to the effect that the petitioner obtained or received directly or indirectly from the complaining witness or anyone else any money or thing of value in consideration of the sale of the stock. It did not appear from the indictment that the complaining witness had purchased any of the stock either from the petitioner or any agent of his or from his company or that the petitioner received any part of the money spent by the complaining witness. This court held that the essential ingredient, namely, the obtaining of something of value, was lacking.

The foregoing case, decided in 1907, is also relied upon by appellant for its statement that statutes of this nature must as against the defendants be strictly construed, while liberally construed in their favor. This court in 1911 said in State v. Raymond, 34 Nev. 198, 117 P. 17:

"It has been the tendency of courts in recent years to be less technical than formerly in construing indictments, especially so where no demurrer was interposed to the indictment and an opportunity afforded to cure the defect prior to trial."

Mr. Justice SWEENEY'S statement that indictments must be strictly construed against the state and liberally construed in favor of the defendant as made in the Waterman case, supra, cited no authorities. The Raymond case, supra, in July 1911, and Ex parte Breckenridge, 1911, 34 Nev. 275, 118 P. 687, Ann.Cas. 1914B, 871, hold for a liberal construction of the indictment, especially where no demurrer was interposed and no opportunity offered to cure the defect prior to trial. In the latter case this court said that the same specific

allegations are not always required to support a judgment that would be exacted if the question were being considered upon demurrer.

The theory of the Raymond and Breckenridge cases more nearly conforms with the legislative mandate contained in N.C.L., sec. 10858, reading as follows:

"No indictment or information shall be deemed insufficient, nor shall the trial, judgment or other proceeding thereon be affected by reason of any defect or imperfection in matter of form which does not tend to the prejudice of a substantial right of the defendant upon its merits."

The foregoing statute, being sec. 210 of the Criminal Practice Act, was not, it should be noted, precisely in its present form at the time of either the 1907 decision or the 1911 decisions, but was amended to read as above in 1919. Stats. of Nevada, 1919, chap. 232, pp. 416, 417.

■ It may be conceded that the indictment in this case is inartistically drawn. Counsel for respondent frankly admitted such fact in his oral argument. The record before us does not disclose that its sufficiency was attacked in any way before the trial. The defendant was represented at the trial by Las Vegas and Los Angeles counsel, and is represented on this appeal by Los Angeles and Reno counsel. The record does not disclose that the rights of defendant were prejudiced by either the lack of artistry in the drafting or lack of full and more definite recitals of fact in the indictment. State v. Harrington, 9 Nev. 91; Ex parte Breckenridge, 34 Nev. 275, 118 P. 687, Ann.Cas.1914B, 871; State v. Hughes, 31 Nev. 270, 102 P. 562; State v. Lovelace, 29 Nev. 43, 83 P. 330. Section 11100, N.C.L., provides:

"After hearing the appeal, the court shall give judgment without regard to technical error or defect which does not affect the substantial rights of the parties." The sufficiency of the indictment is also attacked in other respects. We have considered all such assignments but find the same without merit.

As the indictment states facts sufficient to constitute the offense of obtaining money under false pretenses and as no other error is alleged, the judgment and the order denying defendant's motion for a new trial must be affirmed. It is so ordered.

HORSEY, C. J., and GUILD, District Judge, concur.

EATHER, J., being absent by reason of illness, the Governor commissioned Honorable CLARK J. GUILD, Judge of the First Judicial District of the State of Nevada, to sit in his place.

### ON PETITION FOR REHEARING

January 25, 1950.

*Per Curiam:*

Rehearing denied.