**GULF PETROLEUM, S.A., Appellant,**

v.

**Luis G. COLLAZO, Trustee in Bankruptcy, Appellee.**

**No. 6025.**

United States Court of Appeals
First Circuit.

Heard Feb. 5, 1963.

Decided April 22, 1963.

Victor House, San Juan, P. R., with whom Herbert S. McConnell, Wallace Gonzalez Oliver, Francis Gonzalez Oliver and McConnell, Valdes & Kelley, San Juan, P. R., were on brief, for appellant.

Luis E. Dubon, Jr., San Juan, P. R., for appellee.

Before WOODBURY, Chief Judge, and MARIS * and ALDRICH, Circuit Judges.

MARIS, Circuit Judge.

Gulf Petroleum, S.A., appeals from an order entered in the United States District Court for the District of Puerto Rico affirming the denial by the referee in bankruptcy of Gulf's motion seeking an order staying a sale of the assets of the bankrupt corporation, Puerto Rico Broilers, Inc., or in the alternative, excluding from the sale a portion of the bankrupt's land containing 3,000 square meters, and directing the trustee in bankruptcy to convey the 3,000 square meters of land to it upon payment of $10,000, the balance of the purchase price thereof.

* Sitting by designation.

The following are the facts of the case appearing from the record:

Puerto Rico Broilers, Inc., was the owner of a farm consisting of 19.855 cuerdas in the Barrio of Mamey in the Municipality of Gurabo, Puerto Rico. On June 30, 1960, seven months before it was adjudged a bankrupt, Broilers entered into a contract with Gulf under which Broilers agreed to sell and Gulf agreed to purchase for $30,000 a parcel of land, to be segregated out of its farm, consisting of 3,000 square meters described in the contract, upon which Gulf desired to erect a gasoline service station. The contract provided for closing within 20 days after Gulf made demand to purchase which it agreed to do within 60 days. The obligation of Gulf to purchase was subject to the conditions, inter alia, that approval be obtained from the Planning Board of Puerto Rico of the segregation of the parcel of land being sold, of its rezoning from residential to commercial use, and of its use for a gasoline station. Upon the signing of the contract Gulf paid Broilers the sum of $10,000 which, the contract provided, "shall be credited to the purchase price which must be paid pursuant to paragraph 1, herein; Seller agrees to hold said amount in escrow until closing, and to return it to Purchaser in the event closing does not take place due to any reason other than by default of the Purchaser." On November 4, 1960, more than four months later, the parties executed another contract by which Broilers acknowledged receipt from Gulf of an additional sum of $10,000 to be credited to the purchase price and agreed "to hold the additional amount of Ten Thousand Dollars ($10,-000.00) in escrow until closing, and to return it to Purchaser in the event closing does not take place due to any reason other than by default of the Purchaser." The parties also stipulated in this contract "that the Contract For Purchase and Sale executed by them on June 30, 1960, will remain in full force and effect until closing date."

On December 23, 1960, an involuntary petition in bankruptcy was filed against Broilers. At that time the contract between Broilers and Gulf had not been recorded in the Registry of Property, the approval by the Planning Board of the segregation and rezoning of the property had not been received, although applied for, and there had, therefore, been no closing under the contract or execution and recording of a deed. On January 17, 1961 Broilers was adjudicated a bankrupt and the proceedings were referred to the referee in bankruptcy. On February 13, 1961 Luis G. Collazo was appointed trustee. The contract of June 30, 1960 was not assumed by the trustee within the period of 60 days after January 17, 1961 or at any time after that period.

A public sale by the trustee of all the assets of the bankrupt's estate, including the Gurabo farm, was set for February 23, 1961. On that day Gulf filed with the referee a motion for an order directing that the sale be stayed, or in the alternative, that the trustee be directed to exclude the 3,000 square meters of land from any sale of the property and that the trustee be directed to sign a deed for the 3,000 square meters conveying title to Gulf and thereupon receive the amount of $10,000, the balance of the purchase price. The motion alleged that all of the conditions set forth in the contracts had been fully performed and that the only matter pending to conclude the sale was the execution of the deed and the delivery by Gulf of the $10,000 balance of the purchase price. The referee refused to stay the sale, but he did not confirm the sale of the Gurabo farm. In an order entered September 5, 1961, the referee held that the contract between the bankrupt and Gulf was an executory one, and that it had been rejected by the trustee since he did not assume it, which rejection gave rise to a right of action by Gulf against the bankrupt estate for damages which it was entitled to prove as an ordinary creditor. "But," said the referee, "it does not follow that Gulf is entitled to receive their $20,000 back in full from the trustee to the preference of all other creditors." The referee ac-

cordingly denied Gulf's petition. A petition for review of the referee's order was filed in the District Court by Gulf which also asked that the trustee be directed either to convey the property in question to Gulf upon payment of $10,000 or that the trustee be directed to make full restitution of the amount of $20,000 to Gulf in preference to the claims of other creditors. The District Court, upon review, affirmed the referee's order. This appeal followed.

On this appeal Gulf contends that the referee, and the District Court on review, erred in not directing the trustee to convey the 3,000 square meters of land in question to it, or, in the alternative, in not directing full restitution to it of the $20,000 paid by it in escrow under the contracts between the parties.

■ Gulf's contention that the trustee should have been directed by the referee to convey the land to it upon payment of the balance of $10,000 of the purchase price cannot be sustained. The contract of June 30, 1960 was a contract of purchase and sale [1] which was still executory when bankruptcy intervened since the closing and execution of the deed had not yet taken place. Since the contract was executory the trustee had the right, in the exercise of his discretion, to reject it and under section 70, sub. b of the Bankruptcy Act could do so, as he did,[2] by failing to assume it within 60 days after the adjudication of bankruptcy. Gulf argues that Broilers, and the trustee as its successor in title, held the land in question subject to a

trust, actual or constructive, in favor of Gulf, or, in the alternative, subject to an equitable lien in its favor. Gulf further asserts that the law of Puerto Rico upholds such trusts and liens. The trustee just as vigorously asserts the contrary. We need not determine the state of the Commonwealth law on these subjects, however, since the contracts between the parties, fairly construed, negative any idea that Gulf was intended to have any interest in or lien upon the land prior to the closing under the contract and execution of the deed of conveyance.

■ It will be observed that under the language of the contracts the two payments of $10,000 each which Gulf made to Broilers were not actually to be credited to the purchase price of the land until the closing under the contract. Nor was there any provision therein that Gulf should have a lien on the land as a result of these payments. Rather in each case Broilers agreed to hold the amount "in escrow" until closing and to return it to Gulf if the closing did not take place due to any reason other than by default of Gulf. Thus, until closing, these sums were not to be regarded as having been paid to Broilers on account of the purchase price but rather as funds to be held by Broilers in escrow pending closing and if closing did not take place without fault of Gulf, to be returned to Gulf.[3] The failure to close under the contract and deliver the deed was due solely to the rejection of the contract by the trustee and not to any

1. The trustee argues that the contract was merely an option to purchase which had not been exercised by Gulf when bankruptcy intervened. We see no merit in this contention, however, and reject it as did the referee and the District Court.

2. Gulf argues in this court that the trustee was guilty of an abuse of discretion in rejecting the contract. We do not consider this question, however, since Gulf did not raise it in its petition to the District Court for the review of the referee's order although that order determined, inter alia, that the contract had

been rejected by the trustee, and the District Court accordingly did not pass upon the question in the order now before us on appeal.

3. In these respects the case is distinguishable from In re New York Investors Mutual Group, D.C.N.Y.1956, 143 F.Supp. 51. In that case the purchaser made a payment of $15,000 upon the signing of the contract of sale which the seller received as a payment on account of the purchase price and for which the contract expressly gave the purchaser a lien on the premises sold.

default by Gulf.[4] Accordingly the two payments of $10,000 each never did become funds which Broilers was entitled to treat as payments on account of the purchase price of the land. The right of the parties with respect thereto must, accordingly, be determined by the escrow agreements embodied in the contracts rather than by the contracts as a whole. For these escrow agreements, although embodied in the contracts, were in reality independent of those contracts and must be independently considered. Angelcyk v. Angelcyk, 1951, 367 Pa. 381, 80 A.2d 753. We must, therefore, determine the meaning and effect of these escrow agreements as independent undertakings.

■■ The term "escrow" was originally applied to instruments for the conveyance of land, which were deposited with a third party, to be held until the performance of a condition or the happening of a certain event. 1 Bouvier's Law Dictionary, Rawle's 3d ed., pp. 1072–1074; 30 C.J.S. Escrows §§ 1–3; 19 Am. Jur., Escrow, §§ 1–3; 15 Words and Phrases Escrow pp. 229 et seq. But this term is now commonly used with respect to all written instruments as well as the deposit of money. Baltimore Trust Co. v. Interocean Oil Co., D.C.Md.1939, 26 F.Supp. 817, 822–823; Nash v. Normandy State Bank, 1947, Mo., 201 S.W.2d 299, 301; State v. Hurley, 1949, 66 Nev. 350, 210 P.2d 922, 925. Courts of bankruptcy recognize that money held in escrow is not property which vests in the trustee in bankruptcy under section 70 of the Bankruptcy Act. Stickney v. General Electric Co., 4 Cir., 1930, 44 F.2d 362; Hanson v. Mead-Haskell Co., 1940, 40 Cal.App.2d Supp. 815, 100 P.2d 1117; In re Simon, D.C.N.Y.1958, 167 F.Supp. 214. This is so even though the money was paid to and held by one of the parties to the escrow agreement who subsequently became the bankrupt, since the

bankrupt in such a case, and subsequently his trustee, is to be regarded as holding the so-called escrowed funds in trust under the terms of the agreement and not for general creditors. American Service Co. v. Henderson, 4 Cir. 1941, 120 F.2d 525, 530, 135 A.L.R. 1414.

■ It follows that in the present case Broilers must be held to have received the payments of $20,000 from Gulf in trust and to have assumed the fiduciary duty of holding them intact and returning them to Gulf if, as happened, the closing under the contract was prevented from taking place through no fault of Gulf. These escrow agreements were thus not executory so far as Gulf was concerned since it had paid in full to Broilers the sums which the latter was to hold in escrow. The bankrupt's trustee was, therefore, not entitled to reject the escrow agreements but took the $20,000 of escrowed funds or any property into which the bankrupt had converted those funds or any part of them and into which they may be traced, upon the same trusts upon which Broilers held them and with a like duty to pay them over to Gulf if the closing failed to take place through no fault of Gulf. 4 Collier on Bankruptcy, 14th ed., pp. 1202–1215. See City of Dallas v. Crippen, 5 Cir. 1948, 171 F.2d 526, 529; American Service Co. v. Henderson, 4 Cir. 1941, 120 F. 2d 525, 531.

■ Gulf is accordingly entitled to restitution of the $20,000 in full or so much thereof as remained in the possession of the bankrupt at the time of adjudication and any other property of the bankrupt into which any part of those funds were converted and into which they may be traced. 4 Collier on Bankruptcy, 14th ed., pp. 1215–1225; 4 Remington on Bankruptcy, Henderson, § 1745. But with respect to any portion of the fund which cannot be identified or

4. The trustee argues that Gulf defaulted under the contract by failing to make demand to purchase as provided therein. This contention is wholly without merit, however, since Gulf's obligation to make demand was subject to the fulfillment of the conditions under which Broilers was obligated to obtain certain approvals from the Planning Board and these approvals had not been obtained prior to bankruptcy.

traced into other property Gulf must perforce be relegated to proving its claim as a general creditor against the bankrupt estate. 4 Collier on Bankruptcy, 14th ed., pp. 1217–1219. Gulf may, of course, include in such claim any other damages, e. g., for loss of its bargain, which it may have suffered as a result of the rejection of its contract by the trustee.

A judgment will be entered vacating the order of the District Court and remanding the cause to that court for further proceedings not inconsistent with this opinion.