272 So.2d 261

Jack LUCAS, alias

v.

STATE.

6 Div. 271.

Court of Criminal Appeals of Alabama.

Nov. 21, 1972.

Rehearing Denied Dec. 12, 1972.

James M. Fullan, Jr., Harold T. Ackerman, Birmingham, for appellant.

**336**

William J. Baxley, Atty. Gen., and Herbert H. Henry, Asst. Atty. Gen., for the State.

PER CURIAM.

Appellant was convicted in the Circuit Court of Jefferson County pursuant to an indictment charging false pretense. He was sentenced by proper judgment to five years imprisonment in the penitentiary of Alabama. The indictment charged appellant with obtaining a certified check, the property of James L. Ralphs, of the value of Twenty Thousand Dollars against the peace and dignity of the State of Alabama.

We will undertake to give a résumé of the transaction leading to the accusation and indictment. Mr. James L. Ralphs, the alleged victim of the fraud, was a resident of Gorman, California where he owned considerable property which he used to operate business enterprises. He desired to expand these enterprises and also the prop-

erty which housed them. To that end, he wanted to borrow $500,000.00 which was not then and there available to him except by an interim loan which a California bank agreed to make with the understanding that a permanent loan was to be effected and the interim loan repaid. The interim banker required a commitment from a lending institution of financial responsibility that it would make the permanent loan to Mr. Ralphs.

In quest of a commitment and a permanent loan, Mr. Ralphs utilized the services of his financial adviser and certified public accountant, Mr. Henry Zdonek, who in response to an advertisement in the Wall Street Journal contacted an officer of Prudential Leasing Company of Miami, Florida. As we understand it, this concern offered their services as mortgage brokers.

Encouraged by this contact, Mr. Zdonek made a trip to Miami, Florida, to discuss in detail the probability of obtaining the loan for Mr. Ralphs. Other details of a business deal personal to Mr. Zdonek were discussed. With the understanding that the sum was to be repaid in the event the loan was not obtained, Mr. Ralphs paid the mortgage brokers the sum of $5,000.00 which amount was to be credited on a total fee of $30,000.00 (6 points) should the loan of $500,000.00 be obtained.

These brokers in Florida communicated with appellant in Birmingham, Alabama. Mr. Lucas in turn contacted Mr. Zdonek in California. These two (Mr. Zdonek acting with authority from Mr. Ralphs) reached an agreement whereby Mr. Ralphs was to pay a total of $30,000.00 for services rendered in effecting the loan. This amount included the $5,000.00 paid Prudential in Miami. Mr. Lucas was to receive $5,000.-00 to be refunded if the loan was not consummated. A check for $5,000.00 was issued and delivered to Mr. Lucas. However, the name of Cumberland Insurance Investment Company, Inc., was included as a payee in this check. Cumberland was the company Lucas said would make or assure the loan.

Lucas sought to assure Mr. Zdonek, who admittedly was acting as agent for Mr. Ralphs, that Cumberland Insurance Investment Company, Inc., was financially responsible and that further negotiations would be finalized and the money would be forthcoming. The communications between Lucas and Zdonek prompted Mr. Zdonek and his principal, James L. Ralphs, to enplane in California on January 6, 1970, for Birmingham where they were met at the airport by Mr. Lucas. Mr. Zdonek and Mr. Ralphs brought a certified check of Mr. Ralphs for $20,000.00 payable to Mr. Lucas and Title Security Company of Alabama. During the communications between Lucas et al. this Company was brought into the picture as a potential escrow agent of financial responsibility.

It further appears that Mr. Lucas, Mr. Ralphs, and Mr. Zdonek had dinner together after their arrival in Birmingham. The three discussed plans with respect to the desired loan. They agreed to meet again the following morning in furtherance of the proposed loan.

The three went to breakfast together in Birmingham. Mr. Lucas picked them up at the airport as arranged the previous night. They were joined at breakfast by Mr. Louis Pihakis of Alabama Equity Corporation and also an officer of Title Security Company of Alabama. Discussion of the proposed loan was resumed. Lucas and Pihakis painted a favorable picture of the prospects with respect to the loan and the financial responsibility of Cumberland, and also of Title Security and its competency as an escrow agent. We omit details of the conversation. Suffice it to say that Zdonek and Ralphs were encouraged in the belief that their quest for the loan would be successful.

After breakfast the four went to the office of Pihakis where the latter furnished a financial statement of his company, Alabama Equity Corporation, and also of Title Security Company of Alabama, the proposed escrow agent. Zdonek insisted that he be given a certified financial statement

of Cumberland showing a net worth of $50,000,000.00.

The various conferences and communications between the involved parties, the details of which cover 305 pages of transcript paper, culminated in the execution of two escrow agreements signed by James L. Ralphs for himself and his wife, and an officer of Title Security Company of Alabama, to which we now advert.

The first escrow agreement is dated January 7, 1970. It begins on page 172 of the transcript. The second escrow agreement is dated January 8, 1970, and appears on page 176 et seq. of the transcript. Provisions of the two agreements are the same except the one dated January 8, 1970, bears an addendum relating to a letter of credit which the Ralphs desired, and stated that if not obtained, the deposit was to be returned. The letter of credit was to be irrevocable and to be used in the event the issue of the commitment failed to perform under the terms of the commitment. The letter was to be payable to the Bank of America for and on account of James L. and Edna L. Ralphs.

The following appears in both escrow agreements:

"1. Please take this as an agreement on our part that you act as Escrow Agent in holding money deposited with you by us in the amount of $25,000, said money being deposited as earnest money on a contract and mortgage loan application of this date and shall be held by you pending receipt in behalf of the undersigned of a mortgage loan commitment issued in favor of James L. and E. L. Ralphs, his or its heirs and assigns, wherein the committing agency or entity is committed to make long term mortgage loan to the undersigned in the sum of $500,000 for a term of 20 years at an annual interest rate of not more than 9½%. This commitment may be issued by an Insurance Holding Company, Insurance Company, Bank or Pension Trust or Fund with net assets of not less

than $50 Million as said assets may appear in the financial statement of the issuer dated 8–20–69. Certified by Mr. Webb, C. P. A.

. . . . . .

"4. This escrow instruction and agreement expresses the entire transaction and cannot be altered or modified except in writing and agreed to by the parties hereto with the stipulation however that unless a commitment is issued and received by you within such 15 days from the date hereof for a term of 20 years in the amount of $500,000 at not more than 9½% per annum all amounts previously paid hereunder shall be refunded to the undersigned."

A critical point involved is the contention of defendant that the Ralphs did not part with title to the money or check deposited with the escrow agent.

We wish to note here that Mr. Zdonek, according to his testimony, had a conversation with Mr. Lucas before coming to Alabama, wherein Mr. Lucas stated that the money would be put in an escrow account with Title Security Company of Alabama; that the check should be made payable to Title Security Company of Alabama and J. R. Lucas.

It will be further noted, according to Mr. Zdonek's testimony, that Mr. Lucas and Mr. Pihakis, while in the latter's office in Birmingham, accepted the certified check for $20,000.00. Mr. Lucas endorsed it and gave it to Mr. Pihakis who then took the check and left to go to the office of Title Security Company of Alabama "and open the escrow."

The other check for $5,000.00, although a part of the $25,000.00 mentioned in the escrow agreement, supra, is not involved in the indictment. Mr. Lucas is not accused in the indictment of obtaining this check by means of false pretense. Only the $20,000.-00 certified check is mentioned in the indictment.

Adverting again to the issue relative to title of the involved check remaining in the Ralphs. We quoted with approval in Jackson v. State, 33 Ala.App. 42, 31 So.2d 514, cert. denied 249 Ala. 348, 31 So.2d 519, from Commonwealth v. Barry, 124 Mass. 325, as follows:

" '. . . If the possession of such property is obtained by fraud, and the owner of it intends to part with his title as well as his possession, the offense is that of obtaining property by false pretenses, provided the means by which they are acquired are such as, in law, are false pretenses. If the possession is fraudently [sic] obtained, with intent on the part of the person obtaining it, at the time he receives it, to convert the same to his own use, and the person parting with it intends part [sic] with his possession merely, and not with his title to the property, the offense is larceny. . . .' "

See also Murchison v. State, 32 Ala.App. 427, 26 So.2d 622; 35 C.J.S. False Pretenses § 3, p. 804.

Did the escrow agreement, supra, show an intention on the part of the Ralphs to retain title to the check and money until performance of agreements therein contained?

We observe in W. P. Brown & Sons Lumber Co. v. Steele, 195 Ala. 211, 70 So. 161, as follows:

"When money, or other property, or a written instrument, is delivered in escrow to a depositary, to be delivered by virtue of an executory contract to a third person, who is entitled thereto upon the performance of his obligations in the premises, there is as to such property neither title nor right of possession in such third person until he has himself performed in accordance with the conditions attached to the escrow. In the present case it seems clear beyond controversy that the plaintiffs were not the owners of the note on July 5, 1911, in such sense, either legally or equitably, as entitled them to maintain a suit thereon. . . ."

Although originally, and under the common law, the term "escrow" was applied to instruments for the conveyance of land (30 C.J.S. Escrows § 3, p. 1193), it is now commonly applied to the deposit of any written instrument and to the deposit of money. State v. Hurley, 66 Nev. 350, 210 P.2d 922.

"An escrow is a deed or other instrument importing an obligation deposited with a third party to be held by that party until the performance of a condition or the happening of a certain event and then delivered to take effect: Murphey v. Greybill, 34 Pa.Super. 339, 353. The condition or the contingency upon which the escrow shall be delivered must, of course, be expressed by an agreement of the parties, termed the 'escrow agreement.' Such agreement is entirely separate and apart from the instrument deposited. The terms of an escrow agreement may be incorporated in the deed or instrument deposited but need not be. They may be and usually are incorporated in an entirely separate agreement which may be in writing or oral or partly in writing and partly oral: 19 American Jurisprudence Escrow, § 6, p. 422; 21 C.J. p. 868; 30 C.J.S. Escrows § 4." Angelcyk v. Angelcyk, 367 Pa. 381, 80 A.2d 753.

Where a deed is delivered merely as an escrow, to be delivered upon the performance of original conditions, it is until such performance a mere scroll; and if the grantee obtains possession of the deed before the performance of the conditions he acquires no title thereto. Powers v. Rude, 14 Okl. 381, 79 P. 89; Gaston v. City of Holland, 16 Or. 255, 19 P. 127; Ashford v. Prewitt, 102 Ala. 264, 14 So. 663; Patrick v. McCormick, 10 Neb. 1, 4 N.W. 312; Fuller v. Hollis, 57 Ala. 435.

Mr. Zdonek testified that he had a conversation with Mr. Lucas before coming to

Alabama in which Mr. Lucas stated that the money would be put in an escrow account with Title Security Company of Alabama and that the check should be made payable to J. R. Lucas and Title Security Company of Alabama.

We wish to note that according to Mr. Zdonek's testimony Mr. Lucas and Mr. Pihakis, while in the latter's office, accepted the check for $20,000.00. Mr. Lucas endorsed the check and gave it to Mr. Pihakis. Mr. Pihakis took the check and left to go to the office of Title Security Company of Alabama "and open the escrow."

We again note that a check for $5,000.-00, although a part of the $25,000.00 mentioned in the escrow agreement, supra, was not mentioned in the indictment. Only the $20,000.00 check was there mentioned.

■ We conclude from the testimony of Mr. Zdonek, acting as agent for the Ralphs in the negotiations, that Mr. Lucas agreed that the certified check for $20,000.00 was to be deposited in escrow with Title Security Company of Alabama, and by it to be held pending the performance of the conditions included in the escrow agreement. Mr. Lucas made this agreement not only prior to the arrival of Mr. Ralphs and Mr. Zdonek in Birmingham, but was present when the check was handed over to Mr. Pihakis and Mr. Lucas. At this time Mr. Lucas endorsed the check and handed it over to Mr. Pihakis who left with it to obtain the escrow agreement. Placing the check in escrow was agreed to by all the parties concerned. Mr. Lucas was merely a conduit for the check in its route to become the subject of the escrow agreement and to be lodged with the escrow agent. Mr. Lucas so far as the record shows never asserted any title to the check nor did he retain possession of it. The check became the subject of the escrow agreement as was planned. Title to the check and the proceeds remained in the Ralphs pending full performance of the conditions appearing in the escrow agreement.

If the conditions were not performed and the escrow agent wrongfully or negligently released the check or the money therein certified, the Ralphs are remitted to proper legal action for redress. The record relating to a motion for a new trial seems to indicate that the Ralphs proceeded in federal court at Birmingham seeking redress against the escrow agent and others.

We are convinced from the record before us that the State failed to prove that title to the check passed out of James L. Ralphs by performance of the conditions set forth in the escrow agreement. Divestment of title by performance of the conditions was a vital ingredient of the offense charged in the indictment. Irrespective of the representations alleged in the indictment as being false, Mr. Ralphs relied on the escrow agreement to protect him. He might have been misled by the representations, but he never intended to part company with title to his money or check except through performance of conditions in the escrow agreement. If the conditions of the escrow agreement were met, he has no legitimate complaint that he was defrauded by false representations.

Appellee contends that it is not necessary to a conviction of defendant that he obtain absolute title to the property in question. Franklin v. State, 44 Ala.App. 521, 214 So.2d 924. In this case the defendant, Franklin, was tried and convicted of obtaining property by false pretense. The defendant purchased a new automobile by trading in an old automobile and by signing a conditional sales contract. Defendant told a salesman for the automobile dealer that the car he was trading in was paid for. This was not true. The seller retained title to the car by its conditional sales contract. We held that defendant acquired sufficient property interest in the purchased automobile to support his conviction for obtaining property by false pretense.

In the instant case, Mr. Ralphs kept full title to the check and its proceeds. No one obtained any equity in it. No part of the

money was to be released except upon performance of the conditions appearing in the escrow agreeement. It was agreed that on failure to perform, the earnest money deposited with the escrow agent was to be refunded—not part of it, but all. We cannot accord merit to the State's contention that the *Franklin* case, supra, has application to the instant case.

The defendant did not take the witness stand, nor did he offer any witnesses.

The trial court erred in refusing to grant appellant's motion to exclude the evidence and in refusing appellant's written charge directing the jury to acquit if they believed the evidence.

For these reasons the judgment in this cause must be reversed and the cause remanded.

Reversed and remanded.

CATES, P. J., and ALMON, TYSON and HARRIS, JJ., concur.

DeCARLO, J., dissents.